James E. DAVENPORT, Appellant,

v.

STATE of Alaska, Appellee.

No. 2202.

Supreme Court of Alaska.

Dec. 22, 1975.

Phillip P. Weidner and Lawrence J. Kulik, Asst. Public Defenders, Herbert D. Soll, Public Defender, Anchorage, for appellant.

Robert M. Johnson, Asst. Atty. Gen., Juneau, Joseph D. Balfe, Dist. Atty., Anchorage, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN, BOOCHEVER and BURKE, Justices.

## OPINION

CONNOR, Justice.

Appellant brings this appeal after a jury trial in which he was found guilty of two counts of armed robbery. He was sentenced to two separate ten year jail sentences, to be served consecutively. He urges four separate claims of error regarding the trial court proceedings. Specifically, he asserts that:

1. The trial judge committed plain error in its jury instruction concerning joinder of parties;

2. The jury's verdict was inconsistent in that Davenport was found guilty of two counts of armed robbery, while he was found not guilty on a third count;

3. The consecutive sentences imposed violate appellant's right against double jeopardy; and,

4. The two consecutive sentences, totalling 20 years, were excessive in the circumstances.

 Our resolution of the case requires that we address each of appellant's claims.[1]

During the early morning hours of September 20, 1973, an armed robbery took place at the Holiday Inn in Anchorage. James Davenport was identified as one of the three robbers who accosted five persons at the motel that morning. Subsequently, he was indicted on three counts of armed robbery and separately charged with wrongfully taking currency from Stephen Weston Sailors, a set of wedding and engagement rings from Sharon McCulloch, and currency from Sidney A. Nelson.

Following a jury trial Davenport was found guilty of robbing Sailors and Nelson, but he was acquitted of robbing Sharon McCulloch. The trial judge sentenced the defendant to serve ten years for each of the two counts for which he was convicted. The sentences are to run consecutively, and the court recommended that the defendant serve one-third of the twenty years sentence before becoming eligible for parole. The court also indicated that it would review its sentence, subject to rehabilitation of the defendant. From this judgment and sentence, Davenport appeals.

 Appellant claims that the trial court erred in instructing the jury concerning joinder of parties and the culpability of an aider and abettor to a crime.

Jury Instruction No. 11 stated:

"All persons concerned in the commission of a crime, who either directly and actively commit the act constituting the offense or who knowingly and with criminal intent aid and abet in its commission or, whether present or not, who advise and encourage its commission, are regarded by the law as principals in the crime thus committed and are equally guilty thereof.

A persons aids and abets the commission of a crime when he knowingly and with criminal intent aids, promotes, encourages or instigates by act or advice, the commission of such crime.

All persons concered with the commission of a crime may, but it is not necessary that they, be tried either separately or jointly."

Appellant does not dispute the propriety of the first two paragraphs, but contends that the last paragraph is an incomplete statement of the law of joinder and an inaccurate summary of the preceding two paragraphs.

---

1. In addition to the four errors already set forth, appellant, at oral argument, urged that the indictment, which resulted in his trial and conviction, was insufficient. This contention was raised for the first time at oral argument, and was not raised during the trial, nor in appellant's points on appeal, nor in his brief.

A claim of error which is not raised at trial or in the points on appeal will not be considered unless it constitutes plain error, i. e., it affects substantial rights and is obviously prejudicial. *Burford v. State*, 515 P. 2d 382, 383 (Alaska 1973). Appellant has failed to establish or make any showing of the manner in which he was prejudiced by the indictment in the present case.

The indictment contains all of the elements of the crime of robbery set forth in AS 11.15.240. It specifies the date of, property seized in, and persons accosted in the robbery.

Therefore, this indictment will operate as a bar to subsequent prosecutions for the same offenses, and it fully apprised appellant that he was accused of robbing named individuals of specified property on a particular date. *See Price v. State*, 437 P.2d 330, 331–32 (Alaska 1968).

It is immaterial that the evidence at trial indicated that Davenport had acted as an accomplice rather than as an actual perpetrator of the alleged crimes, since Alaska has abolished the distinction as it affects culpability. AS 12.15.010. Therefore, there is no fatal variance between the indictment and the proof. *Whitton v. State*, 479 P.2d 302, 315–16 (Alaska 1970). Appellant's failure to ask before trial for a bill of particulars or to specify at oral argument the manner in which he was prejudiced, convinces us that appellant's belated claim of error is nonmeritorious. *Cf. Spight v. State*, 450 P.2d 157, 159–60 (Alaska 1969) ; *Theodore v. State*, 407 P.2d 182, 190 (Alaska 1965).

Alaska Criminal Rule 8(b) sets forth the law of joinder as follows:

> "*Joinder of Defendants.* Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count. The disposition of the indictment or information as to one of several defendants joined in the same indictment or information shall not affect the right of the state to proceed against the other defendants."

Alaska Criminal Rule 14 provides for relief from prejudicial joinder as follows:

> "If it appears that a defendant or the state is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may order an election or separate trials of counts, grant a severance of defendants, or provide whatever other relief justice requires. In ruling on a motion by a defendant for severance the court may order the attorney for the state to deliver to the court for inspection in camera any statements or confessions made by the defendants which the state intends to introduce at the trial."

With these rules in mind it is apparent that the last paragraph of Instruction No. 11, so far as it goes, is an accurate statement about the rules of joinder. Its relevance to the issue of the culpability of an aider and abettor is marginal but certainly not prejudicial. Appellant has failed to persuade us that the inclusion of this language in the instruction was prejudicial to him. His argument asserts that it was

harmful to him but never explains why this is so.

Additionally, as no objection was made to the instruction, we would not reverse in any event unless convinced that the instruction contained plain error [2] of an obvious and substantial nature, or that we should consider it to prevent a denial of fundamental rights or a miscarriage of justice. *Hammonds v. State,* 442 P.2d 39, 43 (Alaska 1968); *Noffke v. State,* 422 P. 2d 102, 107 (Alaska 1967); *Dimmick v. State,* 449 P.2d 774, 776 (Alaska 1969). We will not consider this question further.

Davenport next argues that his conviction on two counts of armed robbery should be reversed because the jury found him not guilty on a third count. He relies on *DeSacia v. State,* 469 P.2d 369, 278 (Alaska 1970), in which we held that strictly inconsistent verdicts cannot stand.

In the present case appellant was found guilty of robbing Stephen Weston Sailors and Sidney A. Nelson of currency, but he was acquitted of robbing Sharon McCulloch of a set of wedding and engagement rings. Davenport argues that there was evidence of all three thefts, and that, since his culpability is predicated on an accomplice theory, the jury's failure to convict him of one count is an inconsistency which should exonerate him from the other two counts.

■ The lynchpin in appellant's argument is that assertion that the verdicts are inconsistent. The *DeSacia* opinion noted that the verdicts rendered were "necessarily inconsistent," "irreconcilably in conflict," and "irrational." *DeSacia v. State, supra* at 373, 378. A verdict which does not reach such a high level of inconsistency is allowed to stand. *Daygee v. State,* 514 P.2d 1159, 1168 (Alaska 1973).

It has been suggested that if a verdict is capable of logical reconciliation upon anal-

---

2. Alaska Criminal Rule 47(b) provides:
 "*Plain Error*". Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

ysis of the fact and crimes charged, no legally cognizable inconsistency exists. *Commonwealth v. White*, 296 N.E.2d 822, 823 (Mass.1973).[3] Analysis of the record in the present case reveals a basis upon which the jury's verdict can rationally be explained.

Both Stephen Sailors and Sidney Nelson testified directly that currency was taken from them during the robbery. Conversely, Sharon McCulloch did not testify at the trial at all, and there was no witness who testified to actually seeing the robbers take McCulloch's rings. Instead, the State presented circumstantial evidence in an effort to prove that the robbers took McCulloch's rings.

Reginald Grahn and Kenneth Lee Fritts, two of the five persons accosted that night, testified concerning the rings. Grahn stated that he wasn't certain that the robbers took McCulloch's rings but that the rings were gone after the robbery. Fritts testified that he heard one robber tell the other two to check for rings and that afterwards the rings, which Fritts was certain McCulloch had before the robbery, were gone.

Certainly there is nothing inconsistent about finding a defendant guilty of stealing one piece of property, but not another.[4] Therefore, since appellant was tried under an accomplice theory, the only pertinent question is, "Was the property charged in each count stolen?"

■ The proof offered regarding the currency was direct or testimonial evidence. The proof offered regarding the rings was circumstantial evidence. While it is "out of the question to make a general assertion ascribing greater weight to one class or the other" of evidence,[5] it is apparent that a fact is not necessarily proven by circumstances which are merely consistent with its existence.[6]

■ The jury had been given the "reasonable doubt" instruction, and it is wholly plausible to conclude that the jurors simply felt that the State had not met its burden in proving that the robbers had taken the rings. There was no direct evidence regarding the taking of the rings, the rings apparently were never found, and Sharon McCulloch did not even testify at the trial. Under these circumstances we cannot conclude that the jury's verdict was "strictly inconsistent." *DeSacia v. State, supra* at 378.[7]

It is next urged that the consecutive ten year sentences imposed in this case be viewed as a form of "double jeopardy" under the Alaska and United States Constitutions.[8] Davenport cites no federal authority in support of this contention, but relies heavily on our opinion in *Thessen v. State*, 508 P.2d 1192 (Alaska 1973).

■ The contention that consecutive sentences constitute double jeopardy has no support in case law. It is established that when there is a robbery of more than one person, multiple convictions do not consti-

---

3. *See generally.* Annot., Inconsistency of the Criminal Verdict as Between Different Counts of an Indictment or Information, 18 A.L.R. 3d 259, 287 (1968).

4. *See, e. g., Hall v. State*, 66 Ga.App. 592, 18 S.E.2d 643 (1942). *Cf. Hoag v. State of New Jersey*, 346 U.S. 464, 472, 78 S.Ct. 829, 2 L.Ed.2d 913 (1957).

5. *See* J. Wigmore, Evidence § 26, at 40 (3rd ed. 1940).

6. *Accord, Bottjer v. Hammond*, 200 Kan. 327, 436 P.2d 882, 884 (1968).

7. There is some reference in the briefs and transcripts regarding the possibility that McCulloch's car keys were also stolen from

her person. However, this item of property was not charged in either the original complaint or in the indictment and therefore should not have been within the ambit of the jury's deliberations.

8. Alaska Constitution, art. I, § 9 provides: "No person shall be put in jeopardy twice for the same offense. No person shall be compelled in any criminal proceeding to be a witness againt himself."

U. S. Constitution, amend. V provides in part: ". . . nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself . . .".

tute double jeopardy.[9] Traditionally, courts have treated the robbery of each person as a separate and distinct criminal offense. Analytically, of course, it would be incongruous to conclude that separate, non-mergeable offenses were committed, but that double jeopardy doctrine precluded the imposition of separate, non-concurrent sentences.

Nothing in our *Thessen* opinion prohibits the imposition of consecutive sentences under facts such as those before us. Indeed, certain language used in *Thessen* cuts directly against appellant's position. There we stated:

"Where there has been but one statute violated by a single act, *without intent to harm multiple victims,* the Alaskan constitutional prohibition against placing a person in jeopardy twice for the same offense prevents imposition of multiple punishments." *Thessen, supra,* at 1195 (emphasis added).

This statement strongly suggests that an intent to harm multiple victims will lift the veil of protection which the double jeopardy doctrine might otherwise afford to a defendant.

In deciding whether multiple sentences can be imposed for a criminal act resulting in harm to more than one victim, we must address the question in light of the basic interests of society to be vindicated or protected. We have stated, in this regard, that the "focus must be on the intent and conduct of the perpetrator" so that the "punishment may fit the crime." *Thessen, supra* at 1197.

Generally, we agree with the California Supreme Court, which observed:

"A defendant who commits an act of violence with the intent to harm more than one person or by a means likely to cause harm to several persons is more culpable than a defendant who harms only one person. For example, a defendant who chooses a means of murder that places a planeload of passengers in danger, or results in injury to many persons, is properly subject to greater punishment than a defendant who chooses a means that harms only a single person." *Neal v. State,* 55 Cal.2d 11, 9 Cal.Rptr. 607, 612, 357 P.2d 839, 844 (1960).

Specifically, we are concerned with the increased harm or propensity for harm which inheres in a multiple victim robbery. As the dignity and sensibilities of each individual are affronted, the possibility of violence or bodily injury to one or more of the persons present increases. In addition, we are mindful that each victim of a robbery, as an individual, quite probably suffers fear, anxiety, and resentment as the result of this crime against his or her person. We therefore conclude that the double jeopardy clause does not foreclose the imposition of consecutive sentences for robbing multiple victims in the same transaction.

We have employed the "rule of lenity" in interpreting criminal statutes. Under that rule, when it is unclear whether the legislature intended multiple sentences for a single act involving multiple victims, doubt will be resolved in favor of the defendant. *Thessen v. State, supra,* at 1196. In the present case no doubt concerning legislative intent exists. Consecutive sentences are authorized by AS 11.05.-050,[10] which provides in pertinent part:

"If the defendant is convicted of two or more crimes, before judgment on either, the judgment may be that the imprison-

9. *See e. g., People v. Kelly,* 168 Cal.App.2d 387, 335 P.2d 955 (1959); *People v. Lagomarsino,* 97 Cal.App.2d 92, 217 P.2d 124 (1950); *Keeton v. Commonwealth,* 13 Ky. 748, 18 S.W. 359 (1892); *Novak v. State,* 139 Md. 538, 115 A. 853 (1921); *State v. Williams,* 263 S.W. 195 (1924); *State v. Hoag,* 21 N.J. 496, 122 A.2d 628 (1956), *affirmed,* 356 U.S. 464, 78 S.Ct. 829, 2 L.Ed. 2d 913 (1958), *rehearing denied,* 357 U.S. 933, 78 S.Ct. 1366, 2 L.Ed.2d 1375 (1958); *People v. Rodgers,* 184 App.Div. 461, 171 N.Y.S. 451 (1918), *affirmed,* 226 N.Y. 671, 123 N.E. 882 (1919); *Orcutt v. State,* 52 Okl.Cr. 217, 3 P.2d 912 (1931); *State v. Gratz,* 254 Or. 474, 461 P.2d 829 (1969).

10. *See Lanier v. State,* 486 P.2d 981, 990 n. 21 (Alaska 1971).

ment upon one conviction begins at the expiration of the imprisonment for any other of the crimes."

We already have determined that the robbery of each victim in the present case is a separate and distinct criminal offense. Therefore, since appellant stands convicted of two crimes of robbery, and since AS 11.05.050 permits consecutive sentences for such conduct, the "rule of lenity" is inapplicable. We find no error in the imposition of consecutive sentences.

Finally it is urged that the total twenty year sentence is excessive and that we should modify it or remand the case for resentencing.

The highlights of the record before us reveal that James Davenport at the time of sentencing was a 22-year old, negro male. He has relatives living in Anchorage, though their ability to control and guide him is questionable. He has no known problem with drugs or alcohol. He has completed high school and four months of college, and he has expressed some desire for further college education. His employment record has been intermittent and erratic. His past record reveals that, at the time of sentencing, this was his first adult conviction. However, he has an extensive juvenile record, including convictions for assault and battery, escape, and sale of dangerous drugs. When the presentence report was filed on February 26, 1974, a number of other charges, including carrying a concealed weapon and forgery, had not yet been resolved. Whether the trial judge knew of the disposition of these charges on March 12, 1974, when he imposed sentence, is unknown. Davenport expressed no remorse for the crime of which he was convicted. The comments of interested parties are not particularly favorable to appellant's cause. The probation officer's recommendation was that probation be denied, and that parole be conditioned upon some showing of matura-

tion by Davenport and his participation in realistic vocational training.

In essence appellant appears to be a person who has a marked proclivity for breaking the law, at times in a violent way, and who needs a great deal of supervision to help him develop the responsibility and job skills which might prompt him to stay within the confines of the law in the future.

The trial judge based his sentence in no small degree on the immediate crime for which Davenport was convicted. The judge was concerned with the possibility that the robbers were ready and able to do grave bodily harm to their victims. The judge also felt that the crime showed evidence of careful planning and that, on balance, Davenport was now a danger to society.

In addition, the trial judge expressed concern about rehabilitation and stated that he would review his sentence if Davenport did show signs of rapid rehabilitation. The judge stated that Davenport's past record would not be considered, but he did note that the defendant has a long history of anti-social behavior.

At Davenport's motion to reduce sentence, the judge expressly stated that the sentence was designed to protect society, deter others from similar behavior, and rehabilitate the defendant. The judge placed great emphasis on the point that he expressly agreed to review the sentence subject to rehabilitation of the defendant.

Before commenting on the substantive propriety of the sentence imposed, we must address certain procedural matters which are present in this case.

In rendering this sentence, the judge apparently was motivated in part by the belief that he could review his sentence at a later time, if circumstances warranted. This is not the first case in which the superior court has attempted to retain sentencing jurisdiction after the imposition of

sentence.[11] Nevertheless, we have been unable to discover any authority which would sanction the expansion of the superior court's jurisdiction to pass sentence,[12] into a realm of review and modification which is statutorily vested in either this court,[13] or the executive branch of government.[14] We hold, therefore, that the superior court lacks jurisdiction to review its own sentence, after it has entered a judgment on the matter, more than 60 days after it has imposed sentence.[15] Such a judgment was entered in this case, and insofar as it purports to retain jurisdiction to review the sentence imposed, it is void.

 We also wish to clarify the role and relevance of juvenile records in sentencing procedures. It is apparent that an intelligent decision regarding a defendant's prospects for rehabilitation or his propensity for subsequent criminal conduct cannot be reached *in vacuo*. Our experience teaches us that recent criminal conduct, regardless of whether it antedates the somewhat fortuitous date of legal majority, can aid in the effort to ascertain the magnitude of a defendant's threat to society, and his potential for rehabilitation. For that purpose resort to juvenile court determinations may be both proper and necessary. We have not hesitated to consider juvenile records, when pertinent to sentence appeals before us. *See, e. g., Bradley v. State,* 535 P.2d 1031 (Alaska 1975); *Hixon v. State,* 508 P.2d 526 (Alaska 1973).

Finally, we note that Davenport was 22 years old, and that he was sentenced to 20 years imprisonment without benefit of psychiatric evaluation. On remand the trial court may want to consider whether such an evaluation would be helpful.[16] It may also want to consider sentences which have been reviewed by us in other serious cases.[17]

Affirmed, in part; remanded for resentencing.

---

11. *See Smith v. State,* 531 P.2d 1273, 1276 n. 4 (Alaska 1975).

12. *See* AS 11.05.140.

13. *See* AS 12.55.120.

14. *See* AS 33.15.010 *et seq.* (parole) and AS 33.20.070 (the governor's power of pardon, commutation, and reprieve).

15. *See* AS 12.55.080; Alaska R.Crim.P. 35 (a).

16. See *Hawthorne v. State,* 501 P.2d 155 (Alaska 1972); *Robinson v. State,* 484 P.2d 686 (Alaska 1971); *Newsom v. State,* 533 P.2d 904 (Alaska 1975).

17. *See, e. g., Bradley v. State,* 535 P.2d 1031 (Alaska 1975) (5 year sentence for robbery affirmed); *Holloway v. State,* 535 P.2d 467 (Alaska 1975) (5 year sentence for robbery affirmed); *Roehl v. State,* 521 P.2d 1240 (Alaska 1974) (6 year sentence for robbery affirmed); *Hixon v. State,* 508 P.2d 526 (Alaska 1973) (10 year sentence for robbery and burglary affirmed); *Hawthorne v. State,* 501 P.2d 155 (Alaska 1972) (10 year sentence for robbery reversed and remanded for psychological evaluation); *Robinson v. State,* 492 P.2d 106 (Alaska 1971) (10 year sentence for robbery affirmed); *Robinson v. State,* 484 P.2d 686 (Alaska 1971) (22 year sentence reversed and remanded).