**Tommy L. BROOKINS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. 3972.**

Supreme Court of Alaska.

Sept. 21, 1979.

---

5. The transitive verb "award" means "to grant as merited or due." American Heritage Dictionary 92 (1973).

Andrew J. Kleinfeld, John W. Hagey, Asst. Public Defender, Fairbanks, Brian Shortell, Public Defender, Anchorage, for appellant.

Thomas M. Jahnke, Asst. District Attorney, Harry L. Davis, Dist. Atty., Fairbanks, Avrum M. Gross, Atty. Gen., Juneau, for appellee.

OPINION

Before BOOCHEVER, C. J., and RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

BOOCHEVER, Chief Justice.

Tommy L. Brookins appeals from the sentencing upon his pleas of guilty to two of four counts brought against him; Count I being "attempted armed robbery,"[1] and Count III being assault with intent to commit robbery.[2] Brookins was sentenced to seven years on Count I and ten years on Count III with sentences to run concurrently and with no part suspended.

---

1. As discussed *infra*, the phrase "attempted armed robbery" is only a convenient shorthand description of the combination of three criminal statutes when used in conjunction with each other: AS 11.05.020 (Punishment for attempt), AS 11.15.240 (Robbery), and AS 11.15.-295 (Use of firearm during the commission of certain crimes). It would be more accurate to use a phrase such as "use of a firearm during the attempt to commit a robbery."

2. AS 11.15.160. *See* note 4, *infra*.

This appeal raises questions concerning double jeopardy; interpretation and application of AS 11.05.020, prescribing punishment for an attempt to commit a crime, in conjunction with AS 11.15.295, providing for minimum sentences for use of a firearm during the commission of certain crimes, and AS 11.15.240 proscribing the offense of robbery; and the appropriateness of the length of sentence imposed under the circumstances of this case.

The events of the evening of December 29, 1977, may be reconstructed from the testimony of the various witnesses at the sentencing hearing and from the presentence report. It is undisputed that at about 10:00 p. m. that evening, Brookins and two others, Denson Heard and Steven Wilson, entered a restaurant known as Sweets' Bar-B-Q, intending to rob it. All three wore stocking masks. Brookins carried the only weapon, a rifle. There were no customers at the time; however, two employees and the proprietor were still on duty.

Brookins entered the kitchen and approached Patrice Campbell Fassone, who was washing dishes. She testified that he asked her where Sweets was and she responded that she did not know. According to her testimony, Brookins then momentarily stepped backward and away from her so that he could reach and open the cash register. Inside the cash register were three one-dollar bills. Ms. Fassone testified that Brookins then moved close to her and inquired once more as to the whereabouts of Sweets. After taking a second look into the cash register, Brookins nudged Fassone with the rifle and ordered her to precede him out of the kitchen.

One of the accomplices had been holding the other employee, Terry Holloway, in the dining room when Brookins and Fassone entered. That accomplice had been asking Holloway where Sweets was; she testified she told him that she did not know.

Sweets, whose real name is George Byrdsong, had been in the men's room where he was able to hear what he considered unusual movements and hostile voices. He suddenly charged out from the men's room toward the kitchen, where his .38 revolver was located. According to Byrdsong, Brookins then yelled, "Hold it, don't move." Byrdsong continued, however, and reached his gun, which accidentally fired when he tried to cock the hammer back. The shot sent everyone else scurrying, and the employees ran outside. Byrdsong took a position behind the barbeque pit located in the center of the kitchen.

According to Byrdsong's testimony, he fired from behind his barbeque pit at the man with the rifle, who crouched, turned, and fired back in the direction of Byrdsong.

Byrdsong was able to make a quick and quiet exit out a back door and telephoned the police. He headed back toward his restaurant and noticed Brookins trying to sneak away. Byrdsong took cover behind a van and yelled for Brookins to stop. Brookins raised his rifle, and Byrdsong fired at him. Shots were exchanged as Brookins continued to flee and Byrdsong pursued. Byrdsong finally shot Brookins in the shoulder.

Brookins' recollection of the events of that evening differed substantially from that of the other persons present. According to his testimony at the sentence hearing, he did not fire the rifle inside the restaurant. His testimony was that he had a change of heart about his plans for a robbery after entering the restaurant, that he announced his change in plans in a loud voice and that he regretted his actions. Brookins did admit firing the rifle twice outside the restaurant but asserted that the weapon was not pointed at anyone at the time. The court in imposing the sentence indicated its disbelief of Brookins' recollection of the events of that evening.

Two issues were addressed in supplemental briefs filed by both parties at the request of this court. The first issue involves a question of double jeopardy.

Brookins pleaded guilty to two of four counts brought against him. Count I, titled in the indictment as "attempted armed robbery," reads as follows:

That on or about the 29th day of December, 1977, at or near Fairbanks, in the Fourth Judicial District, State of Alaska, Tommy Lee Brookins, Denson Heard, Deidre Taylor and Steven A. Wilson, did wilfully, unlawfully and feloniously, by putting Terry Holloway, Patrice Fassone (Campbell) and George Byrdsong in fear with a rifle, attempt to take property of value from the person or presence of Terry Holloway, Patrice Fassone (Campbell) and George Byrdsong.

All of which is contrary to and in violation of A.S. 11.05.020, A.S. 11.15.240 and A.S. 11.15.295 and against the peace and dignity of the State of Alaska.[3]

The other count to which Brookins pleaded guilty was Count III, assault with intent to commit robbery,[4] which reads as follows:

That on or about the 29th day of December, 1977, at or near Fairbanks, in the Fourth Judicial District, State of Alaska, Tommy Lee Brookins did unlawfully and feloniously assault George Byrdsong with the intent to rob him.

The crime of assault with intent to rob (AS 11.15.160) requires two elements: first, a specific intent to deprive the person assaulted of the property permanently; and second, an assault. The crime of robbery is composed of three elements: first, a specific intent to deprive an owner of property permanently; second, the use of force, violence or fear; and third, the taking of anything of value from the person against whom the force, violence or fear is used (AS 11.15.240).

Appellant contends that the elements of criminal attempt to rob and criminal assault with intent to rob found in the separate counts to which Brookins has pleaded guilty and has been sentenced are identical under the facts of this case, giving rise to a violation of the constitutional prohibition against double jeopardy.[5]

In *Whitton v. State*, 479 P.2d 302 (Alaska 1970), we held that "Alaska's constitutional prohibition against double jeopardy prevents one from receiving multiple prison sentences for the same offense." *Id.* at 310.[6] *Whitton* established basic guidelines upon which the circumstances of a particular case are viewed in order to determine if there is double jeopardy.

The trial judge first would compare the different statutes in question, as they apply to the facts of the case, to deter-

---

**3.** AS 11.05.020 states in pertinent part:

*Punishment for attempt.* A person who attempts to commit a crime, and in the attempt does any act toward the commission of the crime, but fails, or is prevented or intercepted in the perpetration of the crime, when no other provision is made by law for the punishment of the attempt, upon conviction, is punishable as follows.

(1) If the crime attempted is punishable by imprisonment in the penitentiary or state jail, the punishment for the attempt is by the same imprisonment, as the case may be, for a term not more than half the longest period prescribed as a punishment for the crime. If the period prescribed as a punishment for the crime is an indeterminate or life term, the punishment for the attempt shall be fixed by the court at a term not more than 10 years. AS 11.15.240 states:

*Robbery.* A person who, by force or violence, or by putting in fear, steals and takes anything of value from the person of another is guilty of robbery, and is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year. AS 11.15.295 states:

*Use of firearms during the commission of certain crimes.* A person who uses or carries a firearm during the commission of a robbery, assault, murder, rape, burglary, or kidnapping is guilty of a felony and upon conviction for a first offense is punishable by imprisonment for not less than 10 years. Upon conviction for a second or subsequent offense in violation of this section, the offender shall be imprisoned for not less than 25 years.

**4.** Count III is based upon AS 11.15.160:

*Assault with intent to kill or commit rape or robbery.* A person who assaults another with intent to kill, or to commit rape or robbery upon the person assaulted, is punishable by imprisonment in the penitentiary for not more than 15 years nor less than one year.

**5.** Article I, section 9, of the Alaska Constitution provides in part: "No person shall be put in jeopardy twice for the same offense."

**6.** Even where sentences run concurrently, we will make a determination as to double jeopardy. *Whitton v. State*, 479 P.2d at 314.

mine whether there were involved differences in intent or conduct. He would then judge any such differences he found in light of the basic interests of society to be vindicated or protected, and decide whether those differences were substantial or significant enough to warrant multiple punishments. The social interests to be considered would include the nature of personal, property or other rights sought to be protected, and the broad objectives of criminal law such as punishment of the criminal for his crime, rehabilitation of the criminal, and the prevention of future crimes.

If such differences in intent or conduct are significant or substantial in relation to the social interests involved, multiple sentences may be imposed, and the constitutional prohibition against double jeopardy will not be violated. But if there are no such differences, or if they are insignificant or insubstantial, then only one sentence may be imposed under double jeopardy. Ordinarily the one sentence to be imposed will be based upon or geared to the most grave of the offenses involved, with degrees of gravity being indicated by the different punishments prescribed by the legislature.

*Id.* at 312 (footnote omitted).

■ While there existed no apparent intent or attempt to take any personal belongings of either of the two employees named as victims in Count I,[7] it is clear that the two employees were charged with the custody and control of funds taken in by the restaurant. An assault for purposes of attempting to take restaurant money under the employees' control amounts to an attempted robbery of them.[8]

Brookins pleaded guilty to assaulting Byrdsong with intent to rob him (Count III) and attempting to rob Byrdsong, Holloway and Fassone by putting them in fear with a rifle and attempting to take property of value from their person or presence.

■ As far as the offenses against Byrdsong are concerned, it appears clear that there were no such substantial differences in intent and conduct as to justify multiple sentencing. The assault with intent to rob involved putting Byrdsong in fear by pointing and firing the rifle at him in the attempt to rob the restaurant. The same intent was involved in the Count I, attempt to rob, charge. The conduct was also identical.

The case is quite similar to that of Whitton, who was separately sentenced for one count of robbery and a second count of using a firearm during the commission of the robbery. We held that the intent and conduct involved in count two encompassed that involved in count one:

> Since the more serious offense already proscribes and punishes the activity of the less serious offense, the differences between the two offenses must be deemed insubstantial or insignificant in relation to the social interests involved.[9]

We conclude that, as pertains to Byrdsong, Counts I and III constitute the "same offense" for the purpose of sentencing. Nevertheless, other considerations apply to the attempted robbery of the employees. Byrdsong was not being assaulted when the employees were, and the employees escaped when Brookins began assaulting Byrdsong. There are differences in the form of assaults, since the firearm was not discharged at the employees; the time of assaults; and to a certain extent, the location of assaults.

---

7. This situation is unlike that of *Davenport v. State*, 543 P.2d 1204 (Alaska 1975), where several individuals were each robbed of their own belongings and this court held that the robbery of each victim is a separate and distinct criminal offense. *Id.* at 1210.

8. According to 2 Wharton's Criminal Law and Procedure § 563, at 271 (Anderson ed. 1957) (footnotes omitted):

> It is not necessary that the person from whom the property is taken be the owner thereof. It is sufficient that the victim had prior possession, without regard to whether he had title to or any interest or right in the property. The particular capacity in which he had possession or custody as representative of the owner is not material.
>
> *See also* Annot., 123 A.L.R. 1099 (1939).

9. *Whitton v. State*, 479 P.2d at 314.

■ We conclude that Byrdsong should not have been included in Count I. We order that his name be deleted from Count I, reducing the number of victims from three to two. In view of the differences in intent and conduct involved between the assault on Byrdsong and that on the employees, once the duplication of charges involving Byrdsong is eliminated, there is no double jeopardy issue to be resolved. We realize that the sentence may need to be adjusted in accordance with the reduction in the number of victims involved in Count I.

The second matter upon which supplemental briefs were ordered concerns certain complications which arise when the three statutes contained in Count I are applied in conjunction with each other.

The Alaska criminal statutes do not presently contain one specific statute for armed robbery or, as it is sometimes called, aggravated robbery. The origin of the robbery statute, AS 11.15.240, dates back to 1900.[10] In 1968, a bill was enacted creating AS 11.15.295, concerning the use of firearms during the commission of certain crimes,[11] among which is the crime of robbery. The relationship of these two statutes to each other has been the subject of controversy on previous occasions, and this court has concluded that "[a]t best the legislative intent . . . [as to how they interrelate] . . . is obscure." *Whitton v. State*, 479 P.2d at 305.

■ When the two statutes are combined, the conceptual result is a somewhat hybrid version of "armed robbery." When AS 11.05.020, which defines attempt and provides a formula for computation of sentences for attempted crimes, is included with the two statutes discussed above, certain problems of ambiguity and incongruity emerge, as illustrated by the circumstances of the case at bar. First, AS 11.15.295 applies to "[a] person who uses or carries a firearm during the *commission* of a robbery . . . ." (Emphasis added.) A strict reading of the statute raises the question of whether it should apply to an attempt to commit a certain action, or only to situations in which the action is completed. The statute is ambiguous on this point, but after consideration in pari materia with the other relevant statutes, and in view of the similar public policy against use of a firearm in either an attempted or completed robbery, we conclude that on proper facts AS 11.15.-295 may be applied in the case of an attempted robbery.

■ A second problem arises when trying to compute the correct minimum and maximum sentence for attempted armed robbery. AS 11.05.020 directs that the *longest* term possible for attempt is to be half of the maximum term possible for the underlying crime, which in the case of robbery equals seven and one-half years (*i. e.,* half of the fifteen-year maximum set forth in AS 11.15.240). However, AS 11.15.295 directs that a first offense is punishable by a *minimum* of ten years. Guided by the rule of pari materia and the purposes of logical consistency, we find that, when computing the correct minimum sentence for the hybrid crime of "attempted armed robbery," it would appear that the legislature intended that the prescribed *minimum* of ten years for a first offense be reduced by half, just as the maximum is reduced by half under AS 11.05.020, even though that statute refers only to reduction of the maximum. This view is in accord with the well-established principle of statutory construction which favors a milder penalty over a harsher one when there is ambiguity or doubt concerning the severity of the penalty prescribed.[12] We so construe the statutes.[13]

---

10. § 65–4–24, ACLA 1949; § 26, pt. I (Penal Code), Carter's Ann.Alaska Codes (1900).

11. Ch. 144, § 1, SLA 1968.

12. 3 C. Sands, Sutherland on Statutory Construction § 59.03, at 6–8 (4th ed. 1974).

13. The transcript of the sentence hearing indicates that the trial judge similarly interpreted the statutes.

Appellant puts forth the argument in his original brief that his sentence of ten years was grossly disparate from the sentences received by his two accomplices, each of whom was sentenced to five years, six months to serve and the balance suspended. Appellant also argues that his sentence was, in general, disparate with the mean sentence for robbery, which, he claims, is less than five years.[14]

We find neither of the disparity arguments persuasive. While it may be true that the accomplices could have received stricter sentences, the fact that they did not is of little value in assessing the appropriateness of the sentence imposed upon Brookins for his more serious role in the crime. It was Brookins' use of a rifle that converted an attempted robbery into an "attempted *armed* robbery." His specific actions involving firing the weapon at Byrdsong were of a far more serious character than were the actions of his accomplices.

The comparison of Brookins' sentence to the mean sentence imposed for robbery is likewise of little value since the appellant here used a firearm in attempting to commit the robbery. Of more significance is the fact that Brookins was also sentenced for an assault with intent to commit robbery during which he fired a rifle in the direction of his victim.[15]

Appellant next argues that the sentencing judge did not apply the *Chaney*[16] criteria and that the sentence imposed does not satisfy them. The often-stated standards include the following:

[R]ehabilitation of the offender into a noncriminal member of society, isolation of the offender from society to prevent criminal conduct during the period of confinement, deterrence of the offender himself after his release from confinement or other penological treatment, as well as deterrence of other members of the community who might possess tendencies toward criminal conduct similar to that of the offender, and community condemnation of the individual offender, or in other words, reaffirmation of societal norms for the purpose of maintaining respect for the norms themselves.[17]

While it is not necessary for the sentencing court to cite *Chaney* by name, the listed standards should be heeded. In explaining the sentence imposed, the trial court referred to the need for isolation of the offender and reaffirmation of societal norms. Conspicuously missing from the court's explanation is a consideration of the rehabilitation of the offender into a noncriminal member of society. This goal is an especially important one. Under Alaska's constitution, the principles of reformation and the necessity of protecting the public constitute the touchstones of penal administration.[18]

According to the record before us, it appears that there are factors which should weigh favorably for Brookins. He has no prior record. The pastor of the church Brookins attended testified that Brookins had consulted with him on previous occasions and that he understood Brookins to be very sorry for having betrayed the trust of his parents and fiancée. The probation officer received several letters from various persons who have known Brookins over the years. By most accounts, Brookins is well liked and is described in such terms as quiet, hard-working, respectful, and friendly. Most persons writing the letters expressed shock in learning of Brookins' crime and

14. Appellant cites Alaska Felony Sentencing Patterns: A Multivariate Statistical Analysis (1974–1976), Table I (Alaska Judicial Council preliminary report, April, 1977).

15. In any event, while the statistical report referred to is of general instructional value, it does not attempt to impose guidelines for sentences to follow. Many complex factors are involved in sentencing, the statutory offense and prior convictions of the offenders constituting but two of numerous considerations.

16. *State v. Chaney*, 477 P.2d 441 (Alaska 1970).

17. *Id.* at 444 (footnote omitted).

18. Alaska Const. art. I, § 12, reads in part: Penal administration shall be based on the principle of reformation and upon the need for protecting the public.

considered the action as being out of character. Brookins was to be married in the near future and his fiancée's father still regards Brookins favorably. The sentencing judge was himself impressed by the testimony made on Brookins' behalf, and stated that

> this is certainly among the most numerous amount of favorable recommendations that anyone has received to this court's knowledge . . . . In this case, no question that his past record has been exemplary.

The court was properly mindful of protecting the public, which is especially important where the use of a gun is involved. We agree that the very nature of the offense requires a substantial period of imprisonment. Nevertheless, it is unclear to what extent, if any, the rehabilitation of Brookins was considered. As indicated, he appears to be a fairly good candidate for rehabilitation. While we do not find the sentence imposed to be so excessive as to be clearly mistaken, it does appear to be quite severe.

Since we hold that Byrdsong was improperly included as a victim under Count I, which could affect the length of the sentence, and since the sentencing court did not address the concern for rehabilitating Brookins so that he may become a productive member of society, we remand for resentencing consistent with this opinion.

REMANDED.

RABINOWITZ, J., concurring.

BURKE and MATTHEWS, JJ., dissenting.

RABINOWITZ, Justice, concurring.

In his original brief, counsel for Brookins argued that his sentence of ten years was grossly disparate when compared with the sentences received by his two co-principals, each of whom was sentenced to five years, six months to serve and the balance suspended. Brookins' argument is premised on the notion that few principles of justice are so fundamental as the view that like cases should be treated alike. What concerns me is that the sentencing judge first sentenced Heard, then at Brookins' sentencing hinted that he had perhaps sentenced Heard too leniently; after he had sentenced Brookins, the court sentenced Wilson to the same sentence that Heard had received.

Admittedly, Brookins played a more serious role in the criminal episode which is the focus of this appeal, and therefore is subject to more stringent sanctions than either Heard or Wilson. Nevertheless, I believe that upon remand the court, in resentencing Brookins, should take into consideration this seemingly unjustified disparity.[1]

I am in agreement with all other aspects of the court's opinion in this case.

BURKE, Justice, dissenting in part.

I am convinced that the fact that there were two rather than three victims made absolutely no difference in the court's sentence as to Count I. Thus, I see no need for reconsideration of the sentence on that ground.

With regard to the double jeopardy issue, rather than ordering Byrdsong's name "deleted from Count I," I think that we should order the superior court to simply impose a single sentence, geared to the more serious offense as we said should be done in such cases in *Whitton v. State*, 479 P.2d 302, 312 (Alaska 1970). The result may be the same, but I think the two approaches are conceptually different.

Next, I have grave reservations about the majority's holding that the ten year minimum sentence called for by AS 11.15.295 should be reduced by one-half in the case of an attempted armed robbery. It is extremely difficult for me to believe that the legislature actually intended, in enacting that section, to treat differently the "successful" armed robber and the one who found himself unable to complete the offense because the pockets of his intended victim happened to be empty, or because

---

1. The foregoing is based on the assumption that there is nothing in Brookins' past history, or personality, which would justify the apparent disparity.

some other factor prevented his commission of all of its essential elements. I am more inclined to think that the legislature probably intended the phrase "during the commission of a robbery" to include both completed and incompleted, i. e., attempted robberies. If that was indeed the case, however, the legislature left its intent hopelessly unclear when it then failed to reconcile the conflict that arose between the new section, AS 11.15.295, and AS 11.15.240 as modified by AS 11.05.020. For this reason, like my colleague Justice Matthews, I think the more sensible approach is to construe AS 11.15.295 as not applying to an attempted robbery, and I join in his criticism of the majority's contrary construction.

I share also the other views expressed by MATTHEWS, J. Otherwise, I concur in the majority opinion.

MATTHEWS, Justice, dissenting.

First, I share Justice Burke's belief that the fact that there were two rather than three victims would make no difference in the court's sentence as to Count I, on which the seven year concurrent sentence was imposed.

Second, I think the majority's application of the attempt statute, AS 11.05.020, to the ten-year minimum statute, AS 11.15.295, is incorrect. The ten-year minimum statute only applies to certain enumerated crimes. Attempts are not among them.[1] Since criminal statutes should be strictly construed and in case of ambiguity, which the majority acknowledges to exist here, the narrower reading is to be preferred, *Bell v. United States*, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955), I think it is wrong for the court to tack attempts on to the list of crimes expressed in section 295. It is certainly inconsistent to do so while giving lip service to the maxim "which favors a milder penalty over a harsher one when there is

ambiguity or doubt concerning the severity of the penalty prescribed," for the effect is quite the opposite. Under the majority's construction, attempted robbery with a firearm carries a maximum sentence of seven and one-half years and a minimum of five years, whereas if section 295 were construed not to include attempts the sentencing range would be seven and one-half years maximum and six months minimum. The disparity is magnified for second and subsequent convictions which under the majority's reasoning will carry a twelve and one-half year sentence both as a maximum and a mandatory minimum, while under a narrower and more literal reading of the statute the sentencing range would remain unchanged.

Third, I do not think the trial judge failed to consider Brookins' potential for rehabilitation. Judge Hodges was aware of those factors which could be counted in Brookins' favor mentioned by the majority opinion and he expressly referred to them. He believed, however, that the sentencing goals of deterrence, isolation of the offender and reaffirmation of societal norms justified the sentence. In this I do not think he was mistaken.

I would therefore affirm the sentence.

---

1. Also not included are a few other crimes involving violence against the person of another such as manslaughter, AS 11.15.040 and mayhem, AS 11.15.140. A wide gulf of non-coverage is not created by the omission of attempts or these other crimes of violence be-

cause an assault is among the enumerated crimes, and an assault will nearly always be committed where a firearm is used or carried as a part of any attempted, or completed, crime of violence against a person.