Daniel G. BORN, Appellant,

v.

STATE of Alaska, Appellee.

No. 5095.

Court of Appeals of Alaska.

Sept. 10, 1981.

David C. Backstrom, Asst. Public Defender, Fairbanks and Brian Shortell, Public Defender, Anchorage, for appellant.

Natalie K. Finn, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Peter Michalski, Office of Sp. Prosecutions and Appeals, Anchorage and Avrum M. Gross, Atty. Gen., Juneau, for appellee.

Before BRYNER, C. J., SINGLETON, J., and CARLSON, Superior Court Judge.*

OPINION

BRYNER, Chief Judge.

This is an appeal brought by Daniel Born following conviction by a jury of the crime of rape. At issue is the conflicting testimony presented at trial concerning the offense.

On the evening of June 11, 1979, M.I. met Daniel Born by shooting a few games of pool with him in the Savoy Bar in Fairbanks. Born was there with a friend, Brad Morton. Around closing time, M.I. agreed to Born's suggestion that they go snort some coke. Born asked M.I. to ask her friend M.H. if she wanted to come along with Born, Morton and M.I., which M.H. agreed to do. All four had been drinking at the Savoy Bar; they stopped at another bar for a drink; and finally they stopped at a liquor store for some vodka. They proceeded to Born's mother's house on Farmer's Loop Road where everybody smoked some marijuana and snorted some cocaine. Then M.H. and Morton disappeared into a bedroom, leaving M.I. and Born alone in the living room. There is little dispute as to the facts stated thus far; at this point, however, accounts of the events occurring on that night diverge.

Born's account of what transpired indicates that no rape was committed. According to Born, after M.H. and Morton left the living room, he and M.I. went into another bedroom and engaged in consensual intercourse. They then returned to the living room and M.I. noticed that some money was missing from her purse. She accused Born of taking it, which he denied, and they began to fight and call each other names. Born admitted that in the course of the fight, he grabbed M.I. by the throat and may have caused bruises. After the fight, Born went into the other bedroom to ask M.H. and Morton if they knew about the money, but he became distracted when he found M.H. there alone; he ended up having sex with her.

Born maintains that Morton and M.I. then came into this same bedroom and engaged in an act of intercourse with M.I. on top. After Morton and M.I. had finished, Born attempted anal intercourse with M.I., but when she objected because of discomfort, he withdrew and proceeded to have intercourse vaginally. Afterward, all four went on to Born's aunt's apartment, where they had pizza and fell asleep. According to Born, he and M.I. had another argument over the missing money before they left.

M.I.'s account differs significantly from Born's. According to M.I., when Morton and M.H. left the living room, M.I. asked Born to take her home. Instead, he grabbed her by the neck, forcing her down on the floor and choking her until she could not see. He started to undress her, then led her into a bedroom and had intercourse with her; she was too frightened to protest.

Born left the room. Then Morton came in and had intercourse with M.I.; again she did not protest out of fear. Morton then led M.I. into the other bedroom, where Born was with M.H. Morton went with M.I. to the bed and again began to have intercourse with her, placing M.I. on top of him; at this point he urged Born to "climb on" in back. When Born attempted anal intercourse, M.I. cried out in pain; Born then had vaginal intercourse with her. According to M.I., a short time later everyone left Born's mother's house; they went to an apartment in town, from which M.I. escaped when the other three eventually fell asleep. M.I. ran to a nearby house and called a cab. Some time later the next day, M.I. decided to go to the hospital and to make a report to the Alaska State Troopers.

Morton and M.H. also testified, each giving a different version of what transpired. Morton testified that he had intercourse with M.I. only once, in the presence of Born and M.H., after which Born engaged M.I. in

---

* Carlson, Superior Court Judge, sitting by assignment made pursuant to Article IV, section 16 of the Constitution of Alaska.

anal intercourse. Morton said he heard no choking, and the first fight he heard between M.I. and Born was when they were cleaning up the apartment after completing their sexual activities. Morton confirmed Born's observation that all of M.I.'s activities appeared to be consensual.

The testimony of M.H., by contrast, more or less corroborated that of M.I. M.H. testified that she heard a choking sound from another room while she was in one of the bedrooms with Morton, but that Morton prevented her from going to check on M.I. When Born and M.I. later came into the bedroom which she occupied, M.H. pretended to be asleep. She heard what she believed to be sounds of sexual activity, heard M.I. say that it hurt, and believed that M.I. sounded hurt.

Based on M.I.'s report, Daniel Born and Bradford Morton were charged in a four-count indictment with committing several separate acts of rape on M.I. Counts I and II charged Born and Morton respectively with forcible vaginal rape of M.I. The defendants were acquitted by the jury of these two counts. In Count III, Born and Morton were charged with a separate act of forcible vaginal rape of M.I. committed together or with the assistance of one another. A motion for judgment of acquittal was granted as to Count III upon conclusion of the state's case in chief. In count IV, Born was accused of anal rape and Morton was accused of vaginal rape of M.I., committed together or assisting one another. Morton was acquitted of this count by the jury, but Born was convicted.

After trial, Born twice moved for a judgment NOV, new trial, and acquittal based on inconsistent verdicts, and the motions were denied. Born was sentenced to 20 years imprisonment, which was made consecutive to a five-year sentence received by Born when his parole from a prior rape conviction was revoked as a result of that same incident. Born now appeals both his conviction and sentence.

## 1. INCONSISTENT VERDICTS

Born contends that the court erred in denying his motion for new trial based on the theory of inconsistent verdicts. Born's claim is that his acquittal by the jury on count I amounted to a complete rejection of M.I.'s testimony, thus rendering the jury's verdict on Count IV, finding him guilty of forcible anal intercourse, inconsistent and irrational. Born argues that the force employed is the critical element of the case. If the jury believed M.I.'s version, it would have convicted on all counts; if it believed Born, it would have found that his forcible treatment of M.I. related only to the argument over M.I.'s money and thus would have acquitted on all counts.

Born urges that the purported inconsistency in this case is governed by *DeSacia v. State*, 469 P.2d 369 (Alaska 1970). In *DeSacia*, the supreme court found that verdicts were irreconcilably in conflict when the conduct and intent of the defendant was the same as to two victims of a single act, and yet the defendant was acquitted as to one victim and convicted as to the other.[1] The court did not require that all verdicts be strictly consistent, but only that they not be strictly inconsistent. This is clearly distinguishable from the case at bar, where the indictment charged Born with different crimes arising out of related but different sexual incidents. The conduct charged in Counts I and IV was not the same. Furthermore, there is the possibility, as mentioned in *DeSacia*, that since two separate acts were charged, the defendant's intent

---

1. The unusual factual circumstances involved in *DeSacia* are of particular importance. *DeSacia* was a case in which the defendant was charged with two counts of negligent homicide as a result of an accident in which a car driven by the defendant ran another car off of the road, killing the driver and passenger of the other car. Thus, in *DeSacia*, there was clearly only one criminal act involved; no difference in the defendant's intent toward the two victims of the accident existed; and, since the medical causes of death of the two victims were nearly identical and proximately related to the accident, there was simply no rational explanation for the jury's verdict convicting the defendant on a count relating to one victim and acquitting as to the other victim. These unique factual circumstances are clearly distinguishable from the facts presented in the record before us.

differed between the two. Where there is a question of consent, certainly there is nothing inconsistent about finding that a rape victim consented to one act and not to another. *See Davenport v. State*, 543 P.2d 1204, 1207–08 (Alaska 1975); *see also Daygee v. State*, 514 P.2d 1159, 1168 (Alaska 1973). Thus there is no necessary inconsistency between the differing verdicts on Counts I and IV.

Moreover, given the evidence presented, the differing verdicts can be reconciled in a rational manner. For example, the jury may have believed Born as to when the choking occurred and believed M.I.'s testimony that Born's assault and choking of her were specifically accomplished to force her to submit to additional sexual acts. Thus the jury could well have concluded that M.I.'s initial act of intercourse with Born was consensual, but that the subsequent act of anal intercourse was coerced. By this same logic, the jury's acquittal of Morton on count IV can be explained, since the jury could reasonably have concluded that Morton was unaware of Born's violent treatment of M.I. and acquitted him on that basis.

In a very similar case, *People v. Garner*, 187 Colo. 294, 530 P.2d 496 (1975), the defendant was accused of several acts of forcible sexual intercourse and several acts of deviate sexual intercourse.[2] Defendant admitted to two acts of sexual intercourse, but claimed consent on the part of the victim. When examined after the crime, the victim was hysterical and showed evidence of having been choked. The jury found the defendant guilty of forcible intercourse, but acquitted as to the charges of deviate intercourse. The Colorado court found no inconsistency, since the evidence supporting the two counts was different:

> The evidence in support of the deviate sexual intercourse counts was not "the very same evidence" as that in support of the rape count; rather, the evidence was separate, distinct and independent.
>
> The jury was not bound to accept all or none of the complaining witness' testimony. And, in accepting the victim's account of the forcible rape by appellant, it was not thereby bound to accept her account concerning the alleged forcible deviate sexual conduct. It is fundamental that the credibility of a witness is for the jury, which may accept or reject all or any part of the witness' testimony.

*Id.* 530 P.2d at 498 (citations omitted). Similarly, the jury here was not bound to accept all of M.I.'s story regarding the choking incident, but could piece it together with other evidence and believe enough to reach a reasonable verdict of conviction as to only one count.[3]

Thus, the jury could well have considered the credibility of the witnesses and reached a rational conclusion accepting only part of

**2.** Born cites cases from other jurisdictions to support his position, but these cases are not helpful. In *Robles v. People*, 160 Colo. 297, 417 P.2d 232, 233–34 (1966), the defendant was charged with robbery and conspiracy to commit robbery. The only evidence of conspiracy was the commission of the robbery itself, so that the very same evidence must have been used by the jury in acquitting on the robbery and convicting on the conspiracy. The court therefore found these verdicts inconsistent. In *People v. Bales*, 74 Cal.App.2d 732, 169 P.2d 262 (1946) the complaining witness alleged that she was beaten, kidnapped, and raped; the force used in the kidnapping being the force she feared in the rape. The jury acquitted of kidnapping and convicted of rape. The court found the verdicts to be inconsistent, since if the jury believed the force used was insufficient to support a charge of kidnapping, it was also insufficient for rape.

Born argues here that because the evidence of force is the same for both counts, the evidence is the same. However, this argument overlooks the possibility that the jury could reasonably believe that there was no force used by Born before the acts in Count I, but that M.I. was forced by Born to submit to the acts charged in Count IV. Since Born does admit that he choked M.I., the question is not whether there is evidence of separate force as to the separate acts charged, but when the force occurred and what effect it had on M.I.

**3.** *See State v. Gager*, 45 Haw. 478, 370 P.2d 739 (1962). *Cf. Sevier v. State*, 614 P.2d 791, 794 (Alaska 1980) (jury is to decide how much any inconsistency affects the credibility of the witness); *Noble v. State*, 552 P.2d 142, 144 (Alaska 1976) (trier of fact is the proper judge of the credibility of the witness and the weight to be given to testimony).

M.I.'s testimony in light of the testimony of the witnesses. Under *Davenport v. State*, 543 P.2d at 1207–1208, the verdict "is capable of logical reconciliation upon analysis of the fact and crimes charged," and thus "no legally cognizable inconsistency exists."

Born also challenges as excessive his sentence of 20 years, made consecutive to the five years he has left to serve on a previous rape conviction. Born had been out on parole for 40 days when he committed the acts here charged.

Born concedes that he has had considerable problems with the law. He is 32 years old and has had an alcoholism problem for 14 years. Born first ran away from home and stole money at the age of 11. He ran away from various juvenile facilities, was adjudicated a delinquent minor, committed numerous burglaries, and ended up in a federal correctional institution. His adult record includes convictions for contributing to the delinquency of a minor, petty theft, failure to pay cab fare, furnishing liquor to a minor, disorderly conduct, drinking in public, and several traffic violations. In 1969, Born was convicted of armed robbery and sentenced to ten years. While on parole from that sentence in 1974, he was convicted of forcible rape and sentenced to ten years. He served five years of that sentence before being paroled.

Born contends that the sentencing court failed to accord any weight to rehabilitation as one of the sentencing objectives of *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970). It is clear from the record, however, that the trial court did consider Born's potential for rehabilitation and decided there was none. The court considered Born to be a worst offender based upon his extensive criminal record, his repeated commission of crimes while on parole, and his failure in past efforts at rehabilitation. The court therefore emphasized protection of the public and community condemnation of the crime in fashioning Born's sentence.

■ It is up to the trial court to determine the priority and the relationship of the *Chaney* objectives in any particular case. *Nicholas v. State*, 477 P.2d 447 (Alaska

1970). *See also Shagloak v. State*, 582 P.2d 1034, 1039 (Alaska 1978). Where the circumstances justify the sentencing court's de-emphasis of the goal of rehabilitation because that possibility is minimal or outweighed by other factors, this court will not find that the sentencing court is clearly mistaken in imposing a sentence designed to advance other appropriate sentencing objectives. *Shelton v. State*, 611 P.2d 24, 25 (Alaska 1980); *Gordon v. State*, 501 P.2d 772, 777 (Alaska 1972). Commission of a similar crime shortly after release on bail or parole may properly be recognized as a significant factor in assessing a sentence. *Shelton v. State*, 611 P.2d at 26; *Torres v. State*, 521 P.2d 386, 389 (Alaska 1974); *Robinson v. State*, 484 P.2d 686, 690 (Alaska 1971).

Born does not argue that the trial court erred in classifying him as the worst type of offender. However, he contends that it was error to give him the maximum sentence for what he contends was a non-serious rape compared to those where aggravating factors such as kidnap, use of a weapon, or commission in a heinous manner are involved. While the severity of the crime should be taken into account in imposing sentence, *see Kelly v. State*, 622 P.2d 432, 439 (Alaska 1981); *Hansen v. State*, 582 P.2d 1041, 1046 (Alaska 1978); *Salazar v. State*, 562 P.2d 694, 696–97 (Alaska 1977), this is only one of the factors to be considered.

■ A defendant may be classified as the worst type of offender on the basis of either the nature of the crime committed or the nature of his background and his past criminal misconduct, *Kelly v. State*, 622 P.2d at 439; given such a classification, the maximum sentence may be imposed. *Tuckfield v. State*, 621 P.2d 1350, 1353–54 (Alaska 1981); *Waters v. State*, 483 P.2d 199, 201–02 (Alaska 1971). While a defendant's background should be considered along with the nature of the crime in determining whether he is the worst type of offender, imposition of a maximum sentence does not require a finding that the defendant is the worst type of offender both in terms of his

background and the nature of the specific offenses charged. *Tuckfield v. State*, 621 P.2d at 1354.[4]

■ Daniel Born has two prior convictions for violent felonies, including one for rape. He has an extensive criminal record as a juvenile and as an adult and has spent most of his adult life in prison. His two most recent crimes were committed while on parole, and there is simply nothing in the record to support a finding that there is any likelihood of his rehabilitation.

In view of Born's record, we cannot say that the trial court was clearly mistaken in characterizing him as the worst type of offender. *See Saganna v. State*, 594 P.2d 69 (Alaska 1979); *State v. Wortham*, 537 P.2d 1117, 1120–21 (Alaska 1975); *Waters v. State*, 483 P.2d at 201–02. Thus, imposition of the maximum sentence of twenty years was appropriate.[5]

■ Born contends finally that at a minimum his sentence should include alcohol rehabilitation treatment.[6] By his own ad-

mission, Born has had an alcohol problem since the age of 18. While the trial court did not err in minimizing the importance of rehabilitation as a goal of sentencing, we believe that the court should have recommended alcoholism treatment. *See Nielsen v. State*, 623 P.2d 304, 307 n.2 (Alaska 1981); *Walls v. State*, 598 P.2d 949, 952 (Alaska 1979); *Wire v. State*, 621 P.2d 18, 20 n.8 (Alaska App. 1980). Even where a lengthy sentence is appropriate, most prisoners are eventually released and returned to society; for public protection, such treatment is necessary. *Good v. State*, 590 P.2d 420, 424 (Alaska 1979); *Cleary v. State*, 548 P.2d 952, 955 (Alaska 1976). The judgment should be modified to include a recommendation that Born be provided with alcoholism treatment.

The case is REMANDED for entry of a modified judgment, and in all other respects the judgment is AFFIRMED.

COATS, J., not participating.

---

**4.** Furthermore, rape ranks among the most serious offenses. In *Newsom v. State*, 533 P.2d 904, 911 (Alaska 1975), the supreme court observed that in rape cases,

> [a]lthough the perpetrator of such a crime may not be beyond rehabilitation, which the judge recognized in this case, the crime itself deserves community condemnation; in addition to serving rehabilitative purposes the sentence must reflect such condemnation as well as act as a deterrent to the offender and to others.

*See also Coleman v. State*, 621 P.2d 869 (Alaska 1980); *State v. Wassilie*, 578 P.2d 971, 974–75 (Alaska 1978); *State v. Lancaster*, 550 P.2d 1257, 1259–60 (Alaska 1976).

**5.** In the time since the crime, a new criminal code had been promulgated which sets presumptive sentences for criminal offenders and delineates aggravating and mitigating factors. These sentencing provisions are useful and relevant in the determination of an appropriate sentence under the present circumstances. *Whittlesey v. State*, 626 P.2d 1066, 1068 (Alaska 1980). Under the new code, the presumptive sentence would be 15 years for a third-time offender; the maximum sentence is 20 years. AS 11.41.410(a)(1), AS 12.55.125(c)(3). A court may increase the sentence up to the maximum for factors in aggravation, which here include, at the very least, commission of the offense while on parole. AS 12.55.155(c)(12); *see also* AS 12.55.155(c)(1), (2). The court may

also decrease the sentence if the offense is among the least serious conduct included under the definition of the offense. AS 12.55.-155(d)(9). In light of the force and violence involved in this case, we cannot agree with Born's assertion that his conduct constitutes the least serious included under the definition of the offense. Under the new code, a sentence of 20 years would not be inappropriate.

**6.** Born also argues that his case should be remanded so that a psychological evaluation can be done. Born's counsel at sentencing did not request any evaluation, did not discuss any psychological problems, and agreed that the presentence report was fairly complete. While Alaska courts have stressed the importance of a psychological evaluation in serious cases in which a young offender is sentenced to a lengthy term, *Tommy v. State*, 551 P.2d 179 (Alaska 1976); *Davenport v. State*, 543 P.2d 1204 (Alaska 1975), such a report is not necessary when the trial court has ample information concerning the defendant. *Vail v. State*, 599 P.2d 1371 (Alaska 1979); *Adams v. State*, 521 P.2d 516 (Alaska 1974); *Newsom v. State*, 512 P.2d 557 (Alaska 1973). The information regarding Born was "generally sufficient and accurate" as required by these cases. *See also Wire v. State*, 621 P.2d 18, 20 (Alaska App. 1980).