Samuel TUCKER, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. A–918.

Court of Appeals of Alaska.

June 27, 1986.

---

H. Connor Thomas, Nome, R. Scott Taylor, Asst. Public Defenders, Kotzebue, and Dana Fabe, Public Defender, Anchorage, for appellant.

Cynthia M. Hora, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Harold M. Brown, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., and COATS and SINGLETON, JJ.

## OPINION

BRYNER, Chief Judge.

Samuel Tucker, Jr., was convicted by a jury of first-degree murder, pursuant to AS 11.41.100(a)(1), and second-degree murder, pursuant to AS 11.41.110(a)(1). Superior Court Judge Charles R. Tunley subsequently sentenced Tucker to consecutive terms of ninety-nine years and thirty years, giving him a total of 129 years.

## FACTS

Two officers from the Nome Police Department, dispatched to the Tucker residence in the early morning of February 10, 1984, found the bodies of Samuel Tucker, Sr., and Joyce Tucker, the defendant's father and mother. They had been dead for several hours. Samuel, Sr., had been stabbed once in the chest up to the hilt of the knife, and Joyce had been stabbed 22 times on the face, neck, and chest. There were also cuts on Joyce's hands, which were apparently inflicted when she attempted to ward off her assailant.

Samuel Tucker, Jr., (hereinafter Tucker) was implicated in the murders. A bite-mark found on Joyce's left forearm matched impressions of Tucker's teeth, and a strand of Tucker's hair was found clutched in Joyce's left hand. A shirt Tucker wore earlier in the evening was found stained with Joyce's blood. An imprint of fabric on the shirt was consistent with the fabric of Joyce's sweater. Blood-stained pants were seized from Tucker. The blood on the pants was a mixture of Samuel, Sr.'s, and Joyce's blood. Tucker's underwear was also found to have Samuel, Sr.'s, blood on it.

Tucker had been drinking from 3:00 p.m. on February 9 to 1:00 a.m. on February 10. He was with his friend, Gerald Nashalook, until 9:00 p.m. At that time, Nashalook's mother asked Tucker to leave the Nashalook house because he had gotten into a fist fight with Nashalook. Tucker was seen at various bars in Nome from 10:15 until 1:00 a.m., when he returned home and reported the murders to the police.

At trial, Nashalook testified that, later that night, Nashalook and Tucker met at a bar, and Tucker said something about Tucker's parents. Nashalook could not remember what Tucker said, but he did recall that he could not believe it. Nashalook also testified that he and Tucker decided to go to the Tucker residence. Once there, they kicked down the door to enter. At trial, Nashalook could not remember what he had seen there, but he recalled that he realized that what Tucker had told him earlier was true. Nashalook also remembered throwing a bottle against the shower stall and suggesting that they leave and worry about it later. He testified that they subsequently left and parted company.

## DISCUSSION

Tucker argues that the trial court erred in denying his motion for a bifurcated trial to separate the alternative defenses of alibi and diminished capacity. He invites us to extend the rule of *Houston v. State*, 602 P.2d 784 (Alaska 1979), concerning bifurca-

tion of insanity from other defenses, to allow bifurcation of a diminished capacity defense from a defense of alibi. On appeal, he cites no authority directly supporting his bifurcation argument, and we are aware of none. We decline to adopt a general rule requiring bifurcation, although we do not rule out the possibility that bifurcation of diminished capacity defenses from other defenses might be appropriate in some cases.

■ On the facts of this case, however, where the diminished capacity defense is based exclusively on voluntary intoxication and where evidence of intoxication would be relevant and admissible in proving both defenses, we conclude bifurcation is not required. *See Paul v. State,* 655 P.2d 772, 779 n. 10(d) (Alaska App.1982).

Tucker next argues that the trial court erred in permitting Nashalook to testify. Nashalook had previously claimed to remember nothing about the events of the evening. Tucker asserts that Nashalook subsequently "remembered" only after being threatened by the police with prosecution for the crimes if he failed to remember and after discussing the night's events with his friends, with whom he had been that evening. Based on Nashalook's lack of memory, Tucker argues that Nashalook was not a competent witness.

Alaska Rule of Evidence 602 governs witnesses' capacity to testify:

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that he has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the testimony of the witness himself.

The Commentary for A.R.E. 602 states:
As long as there is some evidence that the witness has personal knowledge, the court must let the jury decide whether or not the witness is really knowledgeable. If the jury believes that the witness has no personal knowledge, it will disregard his testimony. The court may reject testimony of a witness if it finds that no trier of fact could reasonably believe that

the witness has personal knowledge of the matter.

■ The fact that a witness may not have perfect recall about an event is no reason to exclude his testimony. Defects in a witness' recollection are proper subjects for cross-examination and impeachment, but the defects do not generally render the witness' testimony inadmissible. *United States v. Lena,* 497 F.Supp. 1352, 1362 (W.D.Pa.1980). In the present case, Nashalook purportedly would have had personal knowledge, and he asserted that he had independent recollection. Also, Nashalook was subject to cross-examination and impeachment concerning the pressure exerted on him by the police. Thus, Nashalook's testimony would not have been excludable.

■ We caution, however, that police coercion and intimidation of witnesses is improper. *See Webb v. Texas,* 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972) (where coercion of a defense witness was found when a judge threatened the witness with perjury prosecution if he took the stand and lied); *United States v. Hammond,* 598 F.2d 1008, 1012 (5th Cir.1979) (where the court found coercion because the prosecutor threatened a witness with "trouble" if he testified); *United States v. Morrison,* 535 F.2d 223 (3d Cir.1976) (where the court found coercion because the prosecutor threatened a witness with prosecution if he testified). Coercion may result in exclusion of testimony and may require reversal of conviction on due process grounds. *See United States v. Baresh,* 595 F.Supp. 1132 (S.D.Tex.1984); *Berg v. Morris,* 483 F.Supp. 179 (E.D.Cal.1980); *Reese v. State,* 382 So.2d 141 (Fla.App.1980).

■ We do not find reversal to be required in this case, however, because Tucker was able to fully cross-examine Nashalook concerning his defective memory and to apprise the jury fully of the coercive tactics used by the police. The jury was thus capable of making a fully informed decision whether to reject Nashalook's testimony on that basis. More significantly,

Nashalook's testimony was merely cumulative of other evidence presented. Because the same facts were elicited from Nashalook's companions or were indicated by the physical evidence found at the Tucker residence, Tucker was not harmed substantially by admission of Nashalook's testimony.

■ Finally, Tucker appeals his sentence. He first complains that Judge Tunley did not appropriately apply the *Chaney* criteria. Specifically, Tucker complains that Judge Tunley underemphasized the sentencing goal of rehabilitation. In imposing sentence, a sentencing judge must consider the following goals: community condemnation, general and specific deterrence, isolation of the offender from society, and rehabilitation. *State v. Chaney*, 477 P.2d 441, 444 (Alaska 1970). The priority of these sentencing goals is within the judge's discretion. *Clemans v. State*, 680 P.2d 1179, 1189 (Alaska App.1984). The goal of rehabilitation must be considered in every case but need not be given the highest priority as a sentencing goal. *Shearer v. State*, 619 P.2d 726, 728 n. 5 (Alaska 1980); *Clemans v. State*, 680 P.2d at 1189.

■ Judge Tunley considered all the *Chaney* criteria but apparently found rehabilitation unlikely. This conclusion is supported by the fact that Tucker had previously committed numerous alcohol-related offenses, including two that were violent in nature, and by the fact that he had previously been incarcerated, put on probation, and sent to alcohol counseling. In spite of this, Tucker continued to drink. We find that Judge Tunley was not clearly mistaken in failing to assign a more prominent role to the sentencing goal of rehabilitation.

■ Tucker next complains that Judge Tunley erroneously imposed the maximum sentence for first-degree murder. Maximum sentences are appropriate where the defendant can be characterized as a worst offender. *Hintz v. State*, 627 P.2d 207, 210 (Alaska 1981). In evaluating a particular defendant as a worst offender, the manner in which the crime was committed as well as the defendant's character and background is considered. *Id.* Factors include prior criminal convictions, age, military record, employment history, drug or alcohol addiction, presentence report evaluation and recommendations, and antisocial or dangerous behavior that poses a clear risk to the public. *Lock v. State*, 609 P.2d 539, 546 (Alaska 1980).

■ While a defendant's background should be considered along with the nature of the crime in determining whether the defendant is a worst offender, imposition of a maximum sentence does not require a finding that the defendant is a worst offender both in terms of his background and the nature of the specific offenses charged. *Born v. State*, 633 P.2d 1021, 1025–26 (Alaska App.1981). In extreme cases, a defendant may be a worst offender for sentencing purposes because of the nature of the crime, despite having a relatively favorable background. *Notaro v. State*, 608 P.2d 769, 770 (Alaska 1980). *See also Hoover v. State*, 641 P.2d 1263, 1264 (Alaska App.1982); *Born v. State*, 633 P.2d at 1025–26.

■ In the present case, contrary to Tucker's claim, Judge Tunley emphasized both the nature of the crime and Tucker's background. He noted that Tucker was an alcoholic[1] and noted the numerous other crimes, including the assault, that Tucker had previously committed. He also noted Tucker's youthfulness, his education, and his employment background. Because both the nature of the crime and Tucker's background were considered in making the finding that Tucker was a worst offender, Judge Tunley's determination was not clearly mistaken. *See Nukapigak v. State*, 663 P.2d 943 (Alaska 1983) (where the su-

---

1. Although evidence of alcoholism and voluntary consumption of alcohol cannot be considered by a sentencing court as an aggravating or mitigating factor in and of itself, *see* AS 12.55.155(g), such evidence may be considered to the extent that it reflects on a defendant's prospects for rehabilitation. *See State v. Ahwinona*, 635 P.2d 488, 491–92 (Alaska App.1981). Judge Tunley's consideration of Tucker's alcoholism comported with this requirement.

preme court affirmed three consecutive ninety-nine year terms for three counts of first-degree murder because of the defendant's prior convictions and violent propensities when drinking); *Krukoff v. State*, 702 P.2d 664 (Alaska App.1985) (where we affirmed two consecutive ninety-nine year terms for two counts of first-degree murder for the shooting death of defendant's two brothers because of defendant's numerous alcohol-related assaultive convictions).

Tucker also complains that the thirty-year sentence for second-degree murder is excessive. The benchmark prescribed for second-degree murder is twenty to thirty years. *Page v. State*, 657 P.2d 850, 855 (Alaska App.1983). Here, Judge Tunley noted that two aggravating factors would have applied to the second-degree murder sentence had it been presumptive—Samuel, Sr., was a particularly vulnerable victim, AS 12.55.155(c)(5), and was a member of defendant's household, AS 12.55.155(c)(18). These aggravating factors, considered in light of the totality of the circumstances involved in the offense, justified a sentence in excess of thirty years. Thus, a sentence of thirty years is not clearly mistaken. *See, e.g., Evans v. State*, 645 P.2d 155, 163 (Alaska 1982) (affirmed thirty-year sentence); *Gregory v. State*, 689 P.2d 508, 509 (Alaska App.1984) (affirmed ninety-nine year sentence for second-degree murder defendant found to be worst offender with four aggravating factors); *Minchow v. State*, 670 P.2d 719, 720 (Alaska App.1983) (affirmed thirty-year sentence for second-degree murder where no aggravators existed). *See also Faulkenberry v. State*, 649 P.2d 951 (Alaska App.1982).

■ Tucker further argues that Judge Tunley erroneously made the two sentences consecutive. Consecutive sentences ordinarily should not exceed the maximum sentence for a single count without a finding that confinement for the combined term is necessary to protect the public. *Mutschler v. State*, 560 P.2d 377, 381 (Alaska 1977). *But see Nukapigak v. State*, 663

P.2d 943 (Alaska 1983). Contrary to Tucker's assertion, such a finding was made:

I further find that society must be protected from the defendant. That when he drinks, he's dangerous. And he knew from that previous confrontation with his mother with the gun in January of 1978, he continued living there. He continued drinking heavily. Almost foreseeing the senseless and terrible murder of his mother and of his father. The public must be protected from the defendant. As I stated previously, there is no known cure for alcohol.

It can also be inferred from Tucker's record of alcohol-related assaultive conduct—for example, when he previously shot at his mother and police officers and threatened his sisters—that Tucker must be isolated to protect the public. *See Neal v. State*, 628 P.2d 19 (Alaska 1981); *Krukoff v. State*, 702 P.2d 664, 666 (Alaska App.1985). Having independently reviewed the entire sentencing record, we conclude that Tucker's sentence is not clearly mistaken. *McClain v. State*, 519 P.2d 811, 813–14 (Alaska 1974).

■ One aspect of Tucker's consecutive sentence remains to be considered. In *State v. Andrews*, 707 P.2d 900 (Alaska App.1985), *petition for hearing granted* (December 6, 1985), we held that a trial court may impose concurrent rather than consecutive sentences if any of the subsections of AS 12.55.025(g) apply. Here, Tucker argues, and the state concedes, that (g)(1) applies. Judge Tunley imposed Tucker's sentence before our decision in *Andrews* was issued. The judge noted that he was mandated by prior case law to make the sentences consecutive. Although Judge Tunley's sentencing remarks also include comments indicating that he would have made the same sentencing decision even if he had the authority to impose concurrent sentences, his remarks are not entirely free of ambiguity. Accordingly, caution dictates that we remand this case to Judge Tunley, in order to permit him to clarify whether his original sentencing decision should be altered in light of *Andrews*.

The judgment of the superior court is AFFIRMED, and the sentence is REMANDED for proceedings consistent with this opinion.