**Samuel J. TUCKER, Jr., Appellant,**

v.

**STATE of Alaska, Appellee.**

**No. A–5106.**

Court of Appeals of Alaska.

April 7, 1995.

---

Amrit Kaur Khalsa, Anchorage, for appellant.

W.H. Hawley, Asst. Atty. Gen., Office of Sp. Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS, J., and ANDREWS, Superior Court Judge.*

## OPINION

BRYNER, Chief Judge.

Samuel J. Tucker, Jr., was convicted by a jury of murder in the first degree, AS 11.41.100(a)(1), and murder in the second degree, AS 11.41.110(a)(1). This court affirmed his convictions. *Tucker v. State*, 721 P.2d 639, 645 (Alaska App.1986).[1] Tucker

---

\* Sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

1. Our opinion summarized the facts of Tucker's case as follows:

Two officers from the Nome Police Department, dispatched to the Tucker residence in the early morning of February 10, 1984, found the bodies of Samuel Tucker, Sr., and Joyce Tucker, the defendant's father and mother. They had been dead for several hours. Samuel, Sr., had been stabbed once in the chest up to the hilt of the knife, and Joyce had been stabbed 22 times on the face, neck, and chest. There were also cuts on Joyce's hands, which were apparently inflicted when she attempted to ward off her assailant.

Samuel Tucker, Jr., (hereinafter Tucker) was implicated in the murders. A bitemark found on Joyce's left forearm matched impressions of Tucker's teeth, and a strand of Tucker's hair was found clutched in Joyce's left hand. A shirt Tucker wore earlier in the evening was found stained with Joyce's blood. An imprint of fabric on the shirt was consistent with the fabric of Joyce's sweater. Blood-stained pants were seized from Tucker. The blood on the pants was a mixture of Samuel, Sr.'s, and Joyce's blood. Tucker's underwear was also found to have Samuel, Sr.'s, blood on it.

Tucker had been drinking from 3:00 p.m. on February 9 to 1:00 a.m. on February 10. He was with his friend, Gerald Nashalook, until

later filed an application for post-conviction relief, in which he alleged ineffective assistance of counsel on the part of his trial and appellate attorneys. Superior Court Judge Charles R. Tunley conducted an evidentiary hearing on Tucker's application and issued a written decision denying relief. Tucker appeals, arguing that the superior court erred in its denial of post-conviction relief.

Having reviewed the record, we find no merit to Tucker's claims on appeal. In our view, the thorough decision issued by the superior court fully addresses and correctly resolves Tucker's contentions.

■■■ A trial court's denial of post-conviction relief is reviewed by this court to determine whether an abuse of discretion occurred. *Brown v. State,* 803 P.2d 887, 888 (Alaska App.1990). We must accept the trial court's findings of fact unless they are clearly erroneous; we review the trial court's conclusions of law *de novo. Jackson v. State,* 750 P.2d 821, 825 (Alaska App.1988); *Arnold v. State,* 685 P.2d 1261, 1265–66 (Alaska App. 1984).

■■■ In reviewing the trial court's denial of Tucker's ineffective assistance of counsel claims, we apply the now familiar principles of *Risher v. State,* 523 P.2d 421 (Alaska 1974). *Risher* creates a two-prong standard for evaluating ineffective assistance of counsel claims. Under the first prong, the defendant must establish that trial counsel failed to "perform at least as well as a lawyer with ordinary training and skill in the criminal law[.]" *Id.* at 424 (quoting *Beasley v. United States,* 491 F.2d 687, 696 (6th Cir.1974)); *see also Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The standard for ineffective assistance is minimal competence; to establish ineffective assistance, the defendant must show "a level of performance that no reasonably competent attorney would provide." *State v. Jones,* 759 P.2d 558, 568 (Alaska App.1988) (citation omitted). Under the second prong, the defendant must create a reasonable doubt as to whether counsel's lack of competency contributed to the conviction. *Risher,* 523 P.2d at 425; *see also Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

■■■ Tucker first maintains that his trial counsel was ineffective in failing to move for suppression of the clothing that was taken from him without a warrant. However, the record supports Judge Tunley's finding that Tucker's counsel made a reasoned and reasonable decision to forgo a motion to suppress the clothing, since counsel thought that introduction of the clothing would not be damaging to his case. This decision was not incompetent. Moreover, Tucker has failed to establish that the warrantless seizure of the clothing was unlawful, and Tucker has similarly failed to create a reasonable doubt as to whether suppression of the clothing would have altered the jury's decision. Thus, Judge Tunley also properly determined that Tucker failed to show prejudice under the *Risher* standard.

■■■ Tucker next claims that his trial counsel was ineffective in failing to seek exclusion of the testimony of Gerald Nashalook's testimony by characterizing Nashalook's testimony as being based on "dream-refreshed" memory. Tucker argues that his trial counsel should have called an expert witness to testify that dream-refreshed memory is unreliable and therefore inadmissible under the *Frye* [2] standard.

---

9:00 p.m. At that time, Nashalook's mother asked Tucker to leave the Nashalook house because he had gotten into a fist fight with Nashalook. Tucker was seen at various bars in Nome from 10:15 until 1:00 a.m., when he returned home and reported the murders to the police.

At trial, Nashalook testified that, later that night, Nashalook and Tucker met at a bar, and Tucker said something about Tucker's parents. Nashalook could not remember what Tucker said, but he did recall that he could not believe it. Nashalook also testified that he and Tucker decided to go to the Tucker residence. Once there, they kicked down the door to enter. At trial, Nashalook could not remember what he had seen there, but he recalled that he realized that what Tucker had told him earlier was true. Nashalook also remembered throwing a bottle against the shower stall and suggesting that they leave and worry about it later. He testified that they subsequently left and parted company.

*Tucker,* 721 P.2d at 641.

**2.** *Frye v. United States,* 293 F. 1013 (D.C.Cir. 1923).

The record, however, establishes that trial counsel took a slightly different approach to attacking Nashalook's testimony. Trial counsel's theory was that Nashalook had no actual memory of the events he described, but had merely adopted the substance of his dream as his memory. Trial counsel diligently and effectively pursued this theory, first in seeking to exclude Nashalook's testimony on the ground that Nashalook had no actual knowledge of the events addressed in his testimony, and subsequently in arguing Tucker's case to the jury. As explained by trial counsel in an affidavit submitted to the superior court during the post-conviction relief proceedings:

> I spent a substantial amount of effort trying to limit or discredit the testimony of Gerald Nashalook. In my view the issue was one of Gerald having some kind of dream, whether accurate or not, that filled in some gaps in his own memory. He adopted that dream as his recollection. I thus viewed it as a situation where he was not testifying from his personal knowledge of the events, but only from his knowledge of the dream. I brought a motion to exclude his testimony related to the dream and that issue was also raised on appeal.

Because the approach relied on by trial counsel was fact-based rather than science-based, counsel had no occasion to consider calling an expert witness.

In applying for post-conviction relief, Tucker proposed his newly conceived dream-refreshed memory approach as a better approach than the one trial counsel relied on; Tucker faulted his trial counsel for not conceiving of and pursuing the dream-refreshed memory approach. To support this claim, Tucker presented an expert witness who tes-

tified that there is no substantial scientific evidence establishing the reliability of dream-refreshed memory.

For present purposes—although we believe that the record leaves room for considerable doubt on the issue—we assume that a *Frye*-based dream-refreshed memory approach would have been a more effective way of challenging Nashalook's testimony and that it might have resulted in the testimony's exclusion. We also assume that Nashalook's testimony itself was significant.[3] Even so, the record fails to support a finding of incompetent representation.

■ To prevail on his claim of ineffective assistance of counsel, Tucker was required to do more than arrive at the post-conviction relief hearing with a better idea than the one his trial counsel originally thought of. Tucker was obligated to prove, not that his trial counsel could have done things better, but that no competent attorney would have done things as badly as his trial counsel did. As this court has noted, the constitutional guarantee of effective assistance of counsel does not assure "error-free representation." *Jones*, 759 P.2d at 569. Even if trial counsel's actions in retrospect seem to be "mistaken or unproductive[,]" they are "virtually immune from subsequent challenge" if they were minimally competent. *Id.* (citations omitted).

Here, Tucker offers no basis whatsoever for concluding that all competent attorneys would have conceived of the dream-refreshed memory theory Tucker currently proposes,[4] and he similarly offers no basis for concluding that all competent attorneys, having conceived of this approach, would necessarily

---

3. In our earlier opinion affirming Tucker's conviction, we characterized Nashalook's testimony as being "merely cumulative of other evidence presented." *Tucker*, 721 P.2d at 643. On appeal, Tucker argues strongly that our opinion greatly underestimated the potential value of Nashalook's testimony to the state's case at trial. Although the superior court, in assessing Tucker's post-conviction relief application, considered itself bound by our determination that Nashalook's testimony was cumulative, for purposes of deciding this appeal we assume that the testimony deserves the significance Tucker attributes to it.

4. *Cf. State v. Sammons*, 156 Ariz. 51, 749 P.2d 1372, 1377 (1988) (decision to call an expert witness is a matter of trial strategy and will not be found ineffective unless counsel's decision has no reasonable basis); *State v. Hernandez*, 115 N.M. 6, 846 P.2d 312, 323–24 (1993) (trial counsel was not ineffective in failing to call experts where counsel was able to discredit the testimony without an expert and defendant was unable to show that calling an expert would have led to a different outcome).

have selected it as preferable to the approach taken by trial counsel.[5] Neither conclusion is self-evident.

The trial record and trial counsel's subsequent explanation of his actions leave us with a firm impression that trial counsel adopted a sensible approach to attacking Nashalook's testimony and pursued that approach in a manner that was diligent, highly skilled, and quite possibly effective.[6] Trial counsel's performance appears to epitomize competent, not incompetent, representation. In the face of seemingly competent representation, Tucker's after-the-fact offer of a better idea is of no constitutional significance.

■ Tucker lastly claims that he suffered from ineffective representation because his counsel on appeal did not seek appellate review of a superior court order denying Tucker's motion to suppress the fruits of a search conducted pursuant to a warrant that, according to Tucker, had not been issued by a neutral and detached magistrate.

■ This court has never had occasion to pass on a claim of ineffective assistance of counsel involving appellate representation. The parties in this case assume the *Risher* standard to be applicable; this is the standard Judge Tunley applied below. Federal

cases apply the same standard for gauging ineffective assistance of counsel at both the trial and appellate levels. *See, e.g., United States v. Birtle,* 792 F.2d 846, 847 (9th Cir. 1986). We conclude that the *Risher* standard applies to Tucker's claim of appellate incompetence.

■ In denying Tucker's application for post-conviction relief, Judge Tunley found that the two attorneys who framed Tucker's appeal had sound tactical reasons for failing to raise the disputed suppression issue; the judge alternatively concluded that Tucker would not have prevailed had the issue been raised on appeal. We agree with Judge Tunley's conclusion that Tucker's suppression motion lacked legal merit. Tucker has failed to establish that he would have prevailed on the merits had he appealed. He has thus failed to show prejudice.

The record also fully supports Judge Tunley's alternative finding that appellate counsel's failure to pursue the suppression issue reflected a sound tactical choice: counsel deemed other appellate issues more meritorious and did not want to "clutter up the record" with an additional issue. Such strategic choices fall squarely within the sphere of competent representation.[7] Tucker has

---

**5.** *Cf. Rodriquez v. State,* 741 P.2d 1200, 1209 (Alaska App.1987) (trial counsel not ineffective in failing to interview state's expert prior to testimony and in failing to call a rebuttal expert where there was no indication another expert could have helped combat testimony).

**6.** The fact that trial counsel did not succeed in keeping Nashalook off the stand is not determinative of the successfulness of his approach; trial counsel forcefully argued to the jury that Nashalook had no actual recollection of events and was not a credible witness. Given the evidence at trial, the jury could well have convicted Tucker despite having rejected Nashalook's testimony. Thus, the jury's verdict convicting Tucker does not establish that counsel's attack on Nashalook was unsuccessful.

**7.** *See Jones v. Barnes,* 463 U.S. 745, 751–54, 103 S.Ct. 3308, 3312–15, 77 L.Ed.2d 987 (1983) (decision to winnow out weaker arguments on appeal is part of effective appellate advocacy; appellate counsel is not required to raise every colorable claim); *Briones v. State,* 74 Haw. 442, 848 P.2d 966, 978 (1993) (counsel's informed decision on which issues to raise on appeal will

not ordinarily be second-guessed; representation not required to be errorless); *Williamson v. State,* 852 P.2d 167, 169 (Okla.Crim.1993) ("It is the role of appellate counsel to carefully select and develop the legal issues to be presented to the court and not raise every non-frivolous issue conceivable.").

Tucker points out that, because the suppression issue was not raised on direct appeal, he will now be deprived of the opportunity to raise it as a *habeas* claim in federal court. *See Stone v. Powell,* 428 U.S. 465, 494 n. 37, 96 S.Ct. 3037, 3052 n. 37, 49 L.Ed.2d 1067 (1976). Implicit in this argument is Tucker's assumption that the need to preserve an issue for federal *habeas* review would automatically preclude any competent appellate attorney from leaving a colorable fourth amendment stone unturned. This curious assumption, however, would make sense only if collateral federal litigation were viewed as the ultimate objective of direct appellate review in a state tribunal. Although the desirability of preserving an issue for potential federal review is certainly a factor to be considered by counsel faced with a choice of issues to include on appeal in a given case, this factor can hardly be deemed decisive.

thus failed to meet his burden of rebutting the presumption of competence of appellate counsel.

The superior court's order denying post-conviction relief is AFFIRMED.

MANNHEIMER, J., not participating.