28 P.3d 915 (2001)
L.C.H., Appellant,
v.
T.S., Appellee.
No. S-9387.
Supreme Court of Alaska.
August 17, 2001.
*917 Ronald L. Bliss, Bliss, Wilkens & Clayton, Anchorage, for Appellant.
Richard W. Maki and David H. Shoup, Anchorage, for Appellee.
Before FABE, Chief Justice, MATTHEWS, EASTAUGH, and CARPENETI, Justices.

*916 OPINION

CARPENETI, Justice.

I. INTRODUCTION

Tabitha S.[1] alleged that her step-grandfather, Lance H., sexually abused her during five different periods of time, beginning when she was three and continuing through the age of fourteen. After a civil trial, a jury *918 found Lance liable for sexual abuse of a minor and intentional infliction of emotional distress.
This appeal presents two questions. The first is whether the trial court abused its discretion by allowing Tabitha's testimony of alleged abuse, memories of which she claimed under oath that she always remembered, over Lance's objection that her memories were "recovered memories" and thus false. The second question is whether the trial court abused its discretion by allowing the expert opinion testimony of Dr. Nancy Fleisher that explained the profile of behaviors of known child victims of sexual abuse, the extent to which Tabitha exhibited those behaviors, and the probability that Tabitha had been abused.
Our review of the record and the thorough briefing and argument presented by counsel for both parties leads us to conclude that (1) sufficient evidence supports the admissibility of Tabitha's testimony as testimony based on personal knowledge, and (2) Dr. Fleisher's expert testimony was proper rebuttal testimony that did not vouch for Tabitha's veracity. The superior court therefore did not abuse its discretion in admitting both Tabitha's and Dr. Fleisher's testimony. Accordingly, we affirm the verdict and judgment.

II. FACTS AND PROCEEDINGS

A. Facts

Lance H. is Tabitha S.'s step-grandfather; he married Tabitha's maternal grandmother before Tabitha was born. Tabitha never lived with Lance and his wife, but she did visit with them on five occasions, when she was between ages three and fourteen. Tabitha claimed that Lance sexually abused her during each of these visits.
The first period of alleged abuse occurred when Tabitha was three years old and she stayed with Lance and his wife in Norway. During this time, Tabitha testified that Lance fondled her while giving her a bath: she stated that while he was washing her he touched her body and "kind of" put his fingers inside her. She also testified to two instances in her bedroom: in one he fondled her and digitally penetrated her; in the other he had her kiss his penis.
The second period was when Tabitha, then ten years old, visited Lance and his wife in Pitt Meadows, British Columbia. Tabitha testified that Lance committed numerous sexual assaults involving oral and vaginal penetration during this visit. She also testified that Lance told her "this isn't happening..." while he was abusing her.
Tabitha testified that the third period occurred when she was twelve and again visiting with Lance and his wife in Pitt Meadows. She claimed that Lance forced her to perform oral sex upon him in the storage room at the back of Lance's deli during that visit.
The fourth period of abuse to which Tabitha testified occurred when she was thirteen. Lance came to Palmer to visit while Tabitha was recovering from a broken leg. Tabitha testified to an instance of oral sex.
The fifth and last period of abuse occurred in 1993 while Tabitha was visiting Lance and his wife in Pitt Meadows with her younger sister. Tabitha testified that Lance entered the laundry room while Tabitha was doing laundry and that he raped her against the dryer.
Lance denies that he committed any of the above acts. In support of his innocence, Lance points to Tabitha's extensive diary entries as evidence that the memories to which she testified were actually based on false memories that she had recovered with the aid of counselors, either in person or through self-help books.
The first reference in Tabitha's diaries to her belief that she had been sexually assaulted was July 15, 1993, after her final visit with Lance and his wife in Canada. Tabitha was fourteen years of age when she wrote the diary entry. Other diary entries between July and November 1993 reflect dreams about rape, statements that she realized that she had been molested, and references to these events in a draft letter to her mother. In November 1993 Tabitha purchased the book The Courage to Heal, a book about recovering from childhood sexual abuse, at the suggestion of an aunt with whom she had discussed her concerns about abuse. Thereafter, the diary entries through 1997 reflect Tabitha's internal dialogue about what she *919 thought had happened-including her own difficulties believing what she thought she remembered.
At trial, Tabitha also testified about numerous instances of inappropriate sexual conduct with her by others, including by another grandfather. Tabitha testified that her maternal grandfather, C.D., fondled and touched her inappropriately when she was eight years old, for a period of about a month, by inserting a pen light, and maybe scissors, into her vagina as well as masturbating in front of her. C.D. admitted to this conduct.
Other instances of inappropriate sexual conduct to which Tabitha testified included several incidents from when she was five until she was a teenager with boys who were close to her age at the time. When she was five, a boy she was with got undressed and was trying to undress her, but her mother intervened. When Tabitha was twelve and visiting Lance and his wife in Pitt Meadows, she went swimming in a pool when a group of teenage boys came up to her. One of the boys put his fingers under her swimsuit and penetrated her. At age sixteen, Tabitha was asked to watch a movie with the son of her father's landlord. She went to the boy's room where they kissed. She testified that the boy pushed her on the bed, but that she pushed back and ran out. The last instance occurred during a visit with an ex-boyfriend in Juneau when he pinned her down and tried to have sex with her, but she pushed him off.

B. Proceedings

In 1998, when Tabitha was nineteen years old, she filed suit against Lance, alleging numerous instances of childhood sexual abuse, all of which Lance denied.
In April 1999 Lance filed his first motion in limine in which he sought to preclude Tabitha "from testifying regarding any incident of sexual abuse, for the reason that such testimony would constitute `recovered memory.'" Tabitha opposed this motion arguing that her allegations were "not based on recovered memory" but rather on her own personal knowledge, and supported this with her deposition testimony. Superior Court Judge John E. Reese denied Lance's first motion in limine, prior to jury selection, stating
As to the recovered memory issues, those I think arethe way they're raised in this case, as I understand it, that's something that is within the province of the jury, so we will hear evidence on that. So that would also be denied....
After Tabitha testified at trial, Lance moved to strike her testimony. The trial court denied the motion, taking it as a motion to reconsider the earlier ruling on the first motion in limine. Lance also moved at that time for a directed verdict, which was denied.
Lance sought to exclude the expert testimony of Dr. Nancy Fleisher regarding the typical behavior or profile of a victim of childhood sexual abuse and whether Tabitha's conduct was consistent with that profile. The trial court denied Lance's motion regarding sexual abuse profile evidence, stating that "that kind of evidence can come in as response but not as direct evidence." During trial, Lance objected to specific portions of Dr. Fleisher's deposition testimony. The trial court denied all of these objections without discussion, and Dr. Fleisher's videotaped deposition was presented to the jury at trial.
After three days of deliberation, which included overcoming an impasse, the jury found Lance liable for sexual abuse of a minor and intentional infliction of emotional distress. The special verdict form included no specific findings as to any particular instance of alleged abuse or as to the quality of Tabitha's memories.
Lance appeals the admission of Tabitha's testimony regarding memories of childhood sexual abuse and of Dr. Fleisher's expert testimony.

III. STANDARD OF REVIEW

We review "the trial court's admission or exclusion of evidence for abuse of discretion" and reverse "such a decision only when left with the definite and firm conviction that the trial court erred in its decision."[2] We review admissibility of expert testimony for an abuse of discretion.[3]

*920 IV. DISCUSSION

A. The Trial Court Did Not Abuse Its Discretion in Admitting Tabitha's Testimony of Childhood Sexual Abuse by Lance.

1. There was sufficient evidence that Tabitha's testimony was based on personal knowledge.

Lance argues that Tabitha's testimony is based on memories which "originated in dreams and flashbacks" and is therefore based on "recovered" memories. He contends that testimony based on recovered memories requires preliminary reliability findings by the trial court.
Tabitha argues that her claim was not based on a theory of recovered memories because she always remembered the events, but did not always have the words to describe the events. She therefore argues that no preliminary findings were required fortestimony based on personal knowledge.
There are two general categories of cases in which adult survivors of childhood sexual abuse file civil claims.[4] The first is where the adult remembers the abuse but did not come to appreciate the connection between the childhood abuse and the injuries she or he suffers as an adult.[5] The plaintiffs in these "appreciation" cases seek to prove their case on the basis of their personal knowledge.[6]
The second category is the "recovered memory" case, where the adult has no recollection of the abuse until years later.[7] In general, the plaintiffs in recovered memory cases recall their memories of childhood abuse many years or decades after the fact and often after therapy designed to bring back those memories or after another triggering event.[8] These plaintiffs seek to offer scientific evidence of the validity of their recovered memories in the form of expert testimony, which in turn raises issues of admissibility of scientific evidence.[9]
In either type of case, allegations of childhood sexual abuse raise serious concerns about the balance between allowing an alleged victim her or his day in court while protecting the accused against unreliable testimony. Recovered memories of childhood sexual abuse may be problematic in terms of scientific reliability, but when claims are brought within the statute of limitations by a young adult who remembers but does not appreciate until later the causal connection between the conduct and its psychological or emotional effect, the analysis for scientific evidence is not implicated. The evidence rules provide ample protection against unreliable or overly prejudicial evidence when it is based on personal knowledge.
We conclude that the trial court did not abuse its discretion in declining to treat this as a recovered memory case. Tabitha claimed under oath that her testimony was based on personal knowledge. She made no claim that she recovered memories. She claimed that she always remembered the abuse but did not appreciate the consequences of that conduct until she was a teenager. And she presented evidence that she was exploring her memories of abuse before she acquired any self-help books or began attending any support groups. We therefore assess the admissibility of her testimony under Alaska Evidence Rules 602, 104(a), and 403.

2. Tabitha's testimony was sufficiently reliable.

The trial court determined that the issue of Tabitha's memories, as raised in this case, did not warrant exclusion of her testimony. *921 But Lance contends that Tabitha's memories were not "ordinary" because they were the result of "dreams and flashbacks, aided by suggestive literature and counseling." Lance argues that the trial court erred by failing to determine the reliability of Tabitha's testimony and analogizes this case to hypnosis cases because of the element of suggestiveness in false recall. He argues that the trial court should act as a gatekeeper to scrutinize memory evidence, and that Alaska Evidence Rule 104(a)[10] requires examination of memory testimony, not just in hypnosis cases, but where a witness has been subjected to suggestive procedures that raise a substantial risk of memory distortion.
Tabitha argues that no preliminary evidentiary hearing was required under Rule 104(a) because she was not relying on the scientific theory of recovered memory. Tabitha contends that the personal knowledge requirement of Alaska Evidence Rule 602 was satisfied by her deposition testimony submitted as an exhibit to her opposition to Lance's first motion in limine, and that questions about the accuracy and reliability of her memory should be addressed through cross-examination and impeachment, not exclusion. Tabitha notes that Lance was given full opportunity to rebut Tabitha's testimony, including his presentation of expert testimony by Dr. Elizabeth Loftus about the problems of recovered memories.[11]
Evidence Rule 602 provides in part that "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness'[s] own testimony." The commentary to the Alaska Rules of Evidence states that "personal knowledge is not an absolute but may consist of what the witness thinks he knows from personal perception. As long as there is some evidence that the witness has personal knowledge, the court must let the jury decide whether or not the witness is really knowledgeable."[12] And the Alaska Court of Appeals concluded in Tucker v. State[13] that defects in recollection do not generally render witness testimony inadmissible but are instead a proper subject for cross-examination and impeachment.[14] We agree with that conclusion. The sufficiency of the evidence required to support a finding that the witness has personal knowledge is thus minimal. Only where the court finds that "no reasonable trier of fact could believe that the witness perceived what he claims to have perceived" may the court reject the testimony.[15] That is not the case here.
Tabitha's deposition testimony is sufficient to meet the foundational requirement for personal knowledge.[16] Once that threshold is met, it is for the jury to weigh the reliability of the evidence and witness credibility.[17] The reliability of evidence is tested through adversarial methods.[18] And the "[c]redibility of witnesses is exclusively within the province of the trier of fact."[19]
*922 We conclude that the trial court was not required to make preliminary findings because Tabitha's deposition testimony regarding the nature of her memory was sufficient to show personal knowledge under Rule 602. As such, her testimony was properly subject to the traditional tests of cross-examination and impeachment to allow the jury to determine her reliability and credibility.

3. Tabitha's testimony was admissible under Evidence Rule 403.

Even otherwise admissible evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice.[20] Lance argues that Tabitha's testimony is "inherently unreliable" and that the trial court should have excluded it under Rule 403 because her memory was "subject to the risk of confabulation through suggestibility from other sources." Lance contends that Tabitha's diaries reveal a slow, four-year evolution of her beliefs as to the abuse to which she thought she had been subjected, which could only be the result of the influence of the book The Courage to Heal and of her support group. He points to the continued uncertainty reflected in her diaries into mid 1997 as evidence of the distortion of her memories. Lance further argues that Tabitha's testimony is tainted because it is impossible to distinguish a true memory from a false one without other corroborative evidence. He then argues that there is no corroborative evidence because the only evidence is Tabitha's own statements of abuse. Lance argues that the prejudice from the "mere stigma of the accusation" of sexual abuse is disproportionate and contends that the concern here is the suggestibility of human memory.
Tabitha contends that the prejudice from her testimony is not the kind of "unfair" prejudice Rule 403 is designed to guard against. As to Lance's argument that corroborative evidence is required, Tabitha argues that corroboration was not required in this case and notes that it is common that there are no eyewitnesses to sexual abuse. But even if corroboration were required, Tabitha argues that her testimony was corroborated by the following: (1) her mother's testimony regarding change in Tabitha's behavior after visits with Lance and his wife; (2) the testimony of an employee of Lance that Tabitha looked sad and lonely; (3) Tabitha's sister's testimony about Tabitha's protective conduct during their visit with Lance and his wife; and (4) the testimony by Tabitha's girlfriend about her conversation with Tabitha, just days after Tabitha's last visit to Pitt Meadows, in which Tabitha made reference to concerns about abuse.
We conclude that prejudice from the risk of suggestibility does not outweigh the probative value of the testimony in this case. Tabitha's testimony was certainly prejudicial, but it was not unfairly so.[21] The risk of suggestibility here is not the influence or suggestions of ongoing one-on-one therapy or hypnosis; instead, it stems from Tabitha purchasing and reading a book (at the recommendation of an aunt after discussions about Tabitha's concerns about abuse) and from attending counseling and support group sessions. This is no different from the suggestibility to which people are subject in their everyday lives. Lance is correct that allegations of sexual abuse are stigmatizing, but in a case where sexual abuse is the basis for the claim, evidence of such abuse that otherwise meets the requirements of the evidence rules cannot be kept out merely because it has a stigmatizing effect.
In summary, this is not a case that must be analyzed based on a recovered memory theory. Here, the claims were brought based on personal knowledge, of which there is sufficient evidence, and the problems of the reliability of memories were properly used as a defense. In a case like this that is brought relatively close in time to the alleged abuse there is no reason to take credibility *923 and reliability assessments of the witness's personal knowledge from the jury.

B. The Coon Analysis Is Not Applicable to Dr. Fleisher's Testimony.

Lance argues that the expert testimony presented by Dr. Nancy Fleisher of child sexual abuse profile behaviors should be deemed inadmissible under State v. Coon[22] because it lacks scientific validity.
Tabitha argues that Dr. Fleisher's expert opinion testimony was based on "her overall professional evaluation ... in light of her training and experience as a clinical psychologist." She notes our conclusion in Broderick v. King's Way Assembly of God Church that expert opinion about sexual abuse victims is generally accepted,[23] and contends that this refutes Lance's contention that such profile evidence is not scientifically valid.
Dr. Fleisher's testimony is the kind of opinion testimony by a doctor about child sexual abuse that we have previously found to satisfy the admissibility requirements for expert testimony.[24] Her testimony was based on her clinical observations of Tabitha. Such testimony is admissible if:
(1) the evidence is relevant (Rule 401);
(2) the witness is qualified as an expert (Rule 702(a));
(3) the trier of fact will be assisted (Rule 702(a));
(4) the facts or data upon which the opinion is based are of a type reasonably relied upon by experts in the particular field in forming opinions upon the subject (Rule 703); and
(5) the probative value of the evidence is not outweighed by its prejudicial effect (Rule 403).[25]
We conclude that the trial court could properly have taken judicial notice of the admissibility of such evidence based on our opinion in Broderick, and that the scientific validity of her testimony was not implicated in this case.[26]

C. The Trial Court Did Not Err in Admitting the Expert Testimony of Dr. Fleisher Because It Was Not Improper Profile Testimony that Vouched for Tabitha's Credibility.

Lance argues that it was prejudicial error to allow the testimony of Dr. Fleisher because it (1) told the jury that Tabitha fit the profile of a victim of sexual abuse and (2) vouched for Tabitha's credibility.
Tabitha contends that Dr. Fleisher's testimony was admissible to rebut Lance's claim that Tabitha fabricated her allegations of abuse and that it did not improperly vouch for Tabitha's credibility.

1. Background of child sexual abuse profile evidence

In child sexual abuse cases, there is usually little corroborating physical evidence of the alleged abuse; the child may not report the abuse until several years have passed and the matter often comes down to the alleged victim's word against the word of the alleged abuser.[27] The profile of a sexually abused child was first proposed by Dr. Roland Summit in 1983 as Child Sexual Abuse Accommodation Syndrome (CSAAS).[28] *924 The CSAAS model was designed to aid in treatment of children already known to have been abused, not to diagnose abuse.[29] Thus profile testimony is not to be used to prove that abuse has occurred.[30] On the other hand, evidence of post-traumatic stress disorder may be presented.[31]
There are generally four categories of expert testimony that might be presented in these cases: (1) an explanation of typical behaviors or symptoms of known sexually abused children that are apparently inconsistent with abuse, such as delayed or inconsistent reporting, to rebut claims that those behaviors show no abuse occurred; (2) an explanation that some behaviors are commonly observed in sexually abused children and that the child in the case fits those behaviors; (3) expert opinion that the child has been abused based on the expert's evaluation; and (4) expert opinion, based on his or her evaluation, that the child has been abused and that the allegations of abuse are therefore truthful.[32] For purposes of discussion, we label these categories of testimony respectively as (1) rehabilitative or rebuttal testimony; (2) profile or syndrome testimony; (3) ultimate issue testimony (under Alaska Evidence Rule 704); and (4) vouching testimony. Whether Dr. Fleisher's testimony was proper boils down to when expert testimony on an ultimate issue becomes improper vouching testimony.

2. Admissibility of expert testimony in child sexual abuse cases

In Alaska, profile evidence of victims of sexual abuse is admissible and may include expert opinion testimony that the alleged victim's behaviors are consistent with abuse and conform to a clinical finding of abuse.[33] But it must be in response to a claim that the conduct in question is inconsistent with claims of sexual abuse, and it may not go so far as to vouch for the credibility of the complaining witness.[34]
Under Broderick, an expert may express an opinion that a person was abused and that the behaviors of that person conform to clinical findings of abuse.[35] In Broderick, we reversed a grant of summary judgment, concluding that a triable issue of fact had been raised by a doctor's affidavit that had been rejected by the superior court. We noted that expert testimony that "purports to establish by scientific principles that another is telling the truth treads on dangerous legal ground."[36] However, we concluded that expert testimony in which the expert "stated his opinion that [the child] was abused and that her behavior ... was clinically consistent with the finding that she had been sexually molested" did not vouch for the child's credibility.[37] We also concluded that under Evidence Rule 702, expert testimony that expresses "an opinion on the issue of whether the child had, in fact, been sexually assaulted or abused" was proper because it enlightened the jury on a "critical and relevant subject of an esoteric nature."[38]
Profile testimony may be used to rebut a claim that the complaining witness is lying about the alleged abuse in order to provide an alternative explanation to the jury about seemingly self-impeaching behaviors, but it may not vouch for the witness's credibility.[39] In Russell v. State, the court of *925 appeals noted that a party may not offer "evidence that there is a psychological `profile' characteristic of sexual abuse or sexual assault victims to prove that the victim in a particular case fits this profile, and thus that the victim must be telling the truth when he or she claims to have been abused or assaulted."[40] The Russell court did conclude, however, that such "profile" testimony is admissible "in response to a defense claim that the victim's conduct was inconsistent with a claim of sexual assault or sexual abuse."[41] In Russell, profile testimony of battered woman syndrome was admissible because "it explained why [the complaining witness] might stay in an abusive relationship and place herself in situations where she could be abused."[42] The court also concluded that such testimony "explained why [the complaining witness] might not physically resist Russell's attempt to have sexual intercourse with her."[43]
On the other hand, profile testimony in which an expert states that a person fits the profile and that the person is therefore telling the truth is impermissible vouching testimony.[44] Examples of such impermissible testimony include testimony that an alleged victim's report is consistent with valid reports of abuse[45] and testimony that a detailed account of abuse means such abuse occurred.[46] In Cox v. State, the court of appeals concluded that expert testimony that "reports of sexual abuse were not inconsistent with the kinds of reports which other young victims of sexual abuse have made" was proper insofar as it rebutted defense inferences that the complaining witness's behavior indicated she was lying about the alleged abuse.[47] But the expert also vouched for the alleged victim's credibility when he testified that "because [the alleged victim] gave a detailed account of the sexual abuse, [she] had been sexually abused," and this approached plain error.[48] The court of appeals held that the trial court's refusal to allow surrebuttal to this testimony was improper given the highly prejudicial nature of the testimony.[49]

3. Dr. Fleisher's profile testimony was properly admitted as rebuttal testimony.

While conceding that expert testimony that sexual abuse victims fit a psychological profile is admissible as rebuttal evidence, Lance argues that it is inadmissible in this case because Dr. Fleisher's testimony "went beyond the limits of permissible `profile' testimony."
Tabitha's opposition to Lance's arguments on profile testimony breaks into two parts: (1) Dr. Fleisher's testimony "as to the behavior patterns commonly exhibited by sexual abuse victims," and (2) Dr. Fleisher's testimony that "[Tabitha]'s symptoms were consistent with a history of sexual abuse and that it was probable that she had been abused." As to the behavior pattern testimony, Tabitha notes that Lance's defense consisted, in part, of his contention that Tabitha's behaviors and diaries were proof that her claims against him were false and the product of her imagination. She argues that she was entitled to respond to Lance's defense with "expert testimony to show that her conduct was not inconsistent with the occurrence of the claimed abuse."[50] Tabitha *926 next contends that when Lance claimed (through the testimony of Dr. Younggren) that her undisputed symptoms were caused by factors other than sexual abuse by Lance, she was then entitled to rebut this claim with the testimony of Dr. Fleisher that her symptoms were consistent with a history of severe sexual abuse, not necessarily explained by the other instances, and as to the probability that she had been abused.
Because Lance claimed that Tabitha's behaviors were inconsistent with her claims of abuse by him and showed that her memories were false and that her symptoms were caused by the conduct of others, it was not an abuse of discretion for the trial court to allow Dr. Fleisher's testimony for the purpose of rebutting those claims. It is undisputed that Tabitha was abused by another grandfather and that she experienced other instances of inappropriate sexual conduct by other people. However, Dr. Fleisher's opinion testimony as to profile evidence, whether Tabitha fit that profile, and whether it was likely abuse had occurred, was admissible to rebut Lance's defense.

4. Dr. Fleisher's testimony did not improperly vouch for Tabitha's credibility.

Lance argues that Dr. Fleisher's testimony was used to bolster Tabitha's truthfulness in her claims that Lance had abused her by the presentation of expert opinions that vouched for Tabitha's behavior and testimony.
Tabitha agrees that case law does not permit an expert to vouch for another witness's credibility. But she argues that the challenged testimony does not fall within this proscription.[51]
Alaska Evidence Rule 704 allows expert opinion testimony on an ultimate issue provided it assists the trier of fact under Rule 702 and is based on facts or data reasonably relied on by experts in the particular field under Rule 703. Dr. Fleisher was asked by Tabitha's counsel to conduct an evaluation of Tabitha. Dr. Fleisher has a Ph.D. in clinical psychology, and her qualifications as an expert are not in dispute. Among other professional activities, in conjunction with acting as a consultant to agencies, she works with children who have been physically, sexually, or emotionally abused. Dr. Fleisher reviewed existing reports and conducted numerous psychological tests of Tabitha, as well as a clinical interview. When asked if the symptoms she observed in Tabitha were the kind she had seen before in her practice, she answered in the affirmative.
For the following reasons, we conclude that Dr. Fleisher's testimony was based on her personal observations and clinical experience, and as such both assisted the trier of fact and met the requirements of Rule 703. We also conclude that Dr. Fleisher's expert testimony did not improperly comment on the veracity of Tabitha because, as presented in this case, it was proper ultimate issue testimony.

a. Probability testimony

Tabitha argues that Dr. Fleisher's testimony that it was probable that Tabitha had been sexually abused is not improper comment on veracity even though it does tend to corroborate Tabitha's testimony. She also argues that Lance waived any claim of error to Dr. Fleisher's testimony regarding her opinion as to the probability that Tabitha had been sexually abused because he opened the door on cross-examination and then emphasized it in his closing argument.
The challenged testimony is as follows:
Cross-Examination of Dr. Fleisher:
Q: So it makes it very difficult, don't you agree, for anyone to know the truth of what actually occurred in this case, under the circumstances as you know them?
A: I'm not sure ifare you asking if it's difficult to know the details of what happened?
Q: For the truth of whether or not [Lance H.] actually sexually abused [Tabitha S.]?

*927 A: It is difficult, yes.
Q: ... [Tabitha S.] is mistaken in her belief that she was abused by [Lance H.]?
A: Is it possible? Was your question, is it possible?
Q: Yes, let me restate the question so it's clear. Is it possible that [Tabitha S.] is mistaken in her belief that she was abused by [Lance H.]?
A: Yes, it is possible. Redirect Examination
Q: Doctor, you've just testified that it's possible, but is it likely?
A: No, it's not probable. Like I said, anything is possible. And what you look for, again, is a cluster of symptoms. When you say, is it possible that the depression was created by something else? Yes, it's possible. Is it possible that the anxiety was created by something else? Yes, it's possible. That's why we don't look at just one symptom or one trait. We look at the entire personality structure. And if you look at her entire personality structure, it fits very closely to a victim of severe and prolonged sexual abuse.
Q: Okay.
A: So it's possible that she doesn't remember the details or has remembered some and not others, but is it probable that she was not sexually abused? I don't think so. I think it's probable that she was severely sexually abused.
Recross-Examination
Q: My question was, can the psychological sciences determine who caused the sexual abuse ...
A: No.
Q: ... in a sexual abuse victim?
A: No.
Lance objected specifically to the redirect questioning by Tabitha's attorney. But the court overruled the objection.
Dr. Fleisher's testimony does not constitute impermissible vouching because her opinion, which was based on her direct observations, review of existing reports, analysis of the numerous psychological tests she gave Tabitha, and her own clinical interview of Tabitha, did not directly comment on the veracity of Tabitha's allegations. She conceded that it was possible that Tabitha was mistaken about the alleged abuse by Lance, and that it was possible that Tabitha's symptoms had other causes. But it was her opinion that Tabitha fit the profile of one who has been severely abused and that it was probable that such abuse had occurred. Dr. Fleisher did not state that she thought Tabitha was telling the truth, or that her opinion was based on Tabitha's statements. Her opinion was based on facts and data reasonably relied on by experts in her field and could reasonably be construed to assist the trier of fact, especially where opposing expert testimony is also offered, as it was in this case.
Most importantly, Lance had full opportunity for cross-examination, re-cross, and impeachment. And it was during cross-examination that Lance's attorney asked whether it was possible that Tabitha was mistaken about the alleged abuse. The province of the jury to determine credibility was not invaded.
Dr. Fleisher's expert opinion testimony as to the probability that Tabitha had been abused meets the requirements of the evidence rules, does not constitute improper vouching, and is the kind of testimony allowed under Broderick.[52] Dr. Fleisher's testimony may have embraced an ultimate issue but it did not cross the line to improper vouching.

b. Consistent behavior testimony

Lance contends that Dr. Fleisher's testimony that Tabitha's symptoms were consistent with sexual abuse improperly vouched for the veracity of Tabitha's claims.
As discussed above, profile testimony is admissible when offered to rebut a defense claim that the alleged victim's conduct was seemingly inconsistent with abuse.[53] Lance's defense included such a claim. Thus, while *928 Dr. Fleisher's rebuttal testimony that Tabitha's behaviors were consistent with the profile does tend to support Tabitha's testimony, it is testimony admissible under Broderick"[54] and does not invade the province of the jury to assess credibility in this case. The superior court did not abuse its discretion in allowing this testimony.

c. Flashback testimony

Lance argues that Dr. Fleisher's testimony that Tabitha is "actually tormented by regular and frequent flashbacks of the traumatizing sexual abuse that she talked about" directly vouches for Tabitha's credibility.
Tabitha contends that Lance's objection to Dr. Fleisher's testimony that Tabitha suffered from flashbacks is meritless because he expressly confirmed, including in his opening statement, that he was not contesting her symptoms. In addition, she argues that Lance "affirmatively embraced Tabitha's flashbacks as part of his defense" and should thus be deemed to have waived any objection to this testimony.
While Lance has a point that no person can actually know what torments another, in this case the parties do not dispute the existence of flashbacks. The statement therefore does not serve to vouch for Tabitha's credibility because both parties admitted that she, in fact, had flashbacks. There was no abuse of discretion in allowing this testimony.

5. Dr. Fleisher's testimony was not unfairly prejudicial.

Lance argues that cases like this one are "essentially a `swearing match' ... [and that] victim profile evidence is unfairly prejudicial."
The challenged testimony, while prejudicial, is not unfairly so. It was not improper profile testimony, it was subject to cross-examination and refutation by other expert witnesses, and it did not improperly vouch for Tabitha's veracity. And it fits within the rehabilitative or rebuttal use of profile testimony allowed in Alaska.[55] Lance opened the door to the probability testimony by asking Dr. Fleisher if Tabitha could be mistaken in her belief that the alleged abuse by Lance had occurred. And other experts in this case, Drs. Loftus and Younggren, testified that it was not possible for them to determine whether or not the abuse had in fact occurred. Finally, the jury was given an instruction that they were the sole judge of whether they believed an expert's testimony.
The use of profile evidence may suggest to the jury that such evidence is diagnostic of sexual abuse and that the complaining witness's behavior consistent with the profile is affirmative evidence of sexual abuse.[56] However, we conclude that any prejudice by such testimony in this case is outweighed by its probative value.

V. CONCLUSION

The trial court did not abuse its discretion in allowing the testimony of either Tabitha or Dr. Fleisher. The evidence supports the conclusion that Tabitha's testimony was properly admitted as testimony based on personal knowledge. And the challenged expert testimony was properly admitted as rebuttal profile evidence and did not constitute improper vouching. The verdict and judgment are therefore AFFIRMED.
BRYNER, Justice, not participating.
NOTES
[1] Because of the sensitive nature of the factual allegations in this case, we employ pseudonyms throughout this opinion in referring to the parties.
[2] Belluomini v. Fred Meyer, Inc., 993 P.2d 1009, 1016 (Alaska 1999) (citation omitted).
[3] See State v. Coon, 974 P.2d 386, 398 (Alaska 1999).
[4] These are to be distinguished from suits brought by the alleged perpetrator against the victim's psychotherapist based on the claim that false memories of alleged abuse were implanted or created during therapy. See, e.g., Trear v. Sills, 69 Cal.App.4th 1341, 82 Cal.Rptr.2d 281 (1999).
[5] See, e.g., Messina v. Bonner, 813 F.Supp. 346, 348 (E.D.Pa.1993); Parker v. Board of Educ., 229 Mich.App. 565, 582 N.W.2d 859, 863 (1998).
[6] See id.
[7] See, e.g., Logerquist v. McVey, 196 Ariz. 470, 1 P.3d 113, 115 (2000); Doe v. Roe, 191 Ariz. 313, 955 P.2d 951, 956-60 (1998); State v. Quattrocchi, 681 A.2d 879, 881-84 (R.I.1996); Lemmerman v. Fealk, 449 Mich. 56, 534 N.W.2d 695, 696 (1995).
[8] See, e.g., Doe, 955 P.2d at 957.
[9] See, e.g., Logerquist, 1 P.3d at 115.
[10] Alaska Rule of Evidence 104(a) provides in relevant part that "[p]reliminary questions concerning the qualification of a person to be a witness ... shall be determined by the court." The commentary to Rule 104(a) allows the trial judge to act as a preliminary trier of fact "when relevant evidence may be excluded under some rule of evidence and factfinding is necessary in the application of the rule."
[11] While the trial court eventually decided that this was not a recovered memory case, Lance was given a full opportunity to present evidence to support his defense that Tabitha did not have personal knowledge of the events about which she testified.
[12] Commentary to Alaska R. Evid. 602 (citation omitted).
[13] 721 P.2d 639 (Alaska App.1986).
[14] Id. at 642.
[15] 27 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6027, at 244 (1990).
[16] When asked during her deposition if she had always had memories of abuse, Tabitha answered in the affirmative. She also said that as she got older she acquired the words to describe what she had experienced.
[17] See Sherbahn v. Kerkove, 987 P.2d 195, 200 (Alaska 1999).
[18] See Reutter v. State, 886 P.2d 1298, 1305 (Alaska App.1994).
[19] Broderick v. King's Way Assembly of God Church, 808 P.2d 1211, 1220 (Alaska 1991) (internal quotation marks and citation omitted).
[20] See Alaska R. Evid. 403.
[21] For example, Tabitha's most questionable, and prejudicial, claims are from her first visit with Lance and his wife in Norway when she was three. Caregivers to young children bathe them and in so doing engage in intimate touching of the child. If the bath incident were the only one Tabitha remembered from age three, then it might be reasonable to exclude such testimony by a nineteen-year-old as unfairly prejudicial. However, in this case, there is evidence that Tabitha remembered other instances of inappropriate conduct from that time period.
[22] 974 P.2d 386 (Alaska 1999).
[23] 808 P.2d at 1216.
[24] See id.
[25] Coon, 974 P.2d at 393.
[26] See id. at 398 ("[W]hen an area of expertise is well-known and has been fully considered by the courts, a trial court may take judicial notice of its admissibility."). We take this opportunity to note that we have not yet decided how far Coon extends; for example, we have not had to decide whether it applies to scientific techniques or theories beyond those that are novel. However, the parties have not raised that issue here.
[27] See, e.g., State v. W.L., 278 N.J.Super. 295, 650 A.2d 1035, 1038 (App.Div.1995) ("The trial was, in effect, a credibility contest between father and daughter."); see also Lisa R. Askowitz & Michael H. Graham, The Reliability of Expert Psychological Testimony in Child Sexual Abuse Prosecutions, 15 Cardozo L.Rev.2027, 2033-34 (1994); Rosemary L. Flint, Note, Child Sexual Abuse Accommodation Syndrome: Admissibility Requirements, 23 Am. J.Crim. L. 171, 178-79 (1995).
[28] See generally Roland C. Summit, The Child Sexual Abuse Accommodation Syndrome, 7 Child Abuse & Neglect 177 (1983).
[29] See, e.g., id.; see also Askowitz & Graham, supra note 27, at 2039-40; Flint, supra note 27, at 176-77.
[30] See id.; see also State v. J.Q., 252 N.J.Super. 11, 599 A.2d 172, 186-87 (App.Div.1991).
[31] The experts in this case discussed post-traumatic stress syndrome, but noted that they had not diagnosed Tabitha as having it because the existence of a triggering event was in dispute and to be decided by the jury. See generally Broderick v. King's Way Assembly of God Church, 808 P.2d 1211, 1216-17 (Alaska 1991).
[32] See Askowitz & Graham, supra note 27, at 2035.
[33] See Broderick, 808 P.2d at 1216.
[34] See Russell v. State, 934 P.2d 1335, 1343 (Alaska App.1997).
[35] 808 P.2d at 1216.
[36] Id. (quoting Rodriquez v. State, 741 P.2d 1200, 1204 (Alaska App.1987)).
[37] Id.
[38] Id. at 1217 (quoting Townsend v. State, 103 Nev. 113, 734 P.2d 705, 708 (1987)).
[39] See Russell, 934 P.2d at 1343.
[40] Id. at 1343.
[41] Id.
[42] Id. at 1344.
[43] Id.
[44] See id. at 1343.
[45] See Nelson v. State, 782 P.2d 290, 297-99 (Alaska App.1989) (concluding that expert testimony, that victims' reports of sexual abuse were consistent with valid reports of sexual abuse, was inadmissible because it "effectively informed the jury that, in his expert opinion, [they] were telling the truth and had been abused by Nelson").
[46] See Cox v. State, 805 P.2d 374, 378-79 (Alaska App.1991).
[47] Id. at 378.
[48] Id.
[49] See id. at 379.
[50] Tabitha notes that Lance's own expert testified that abusers often state "it's not real" or "it's not happening." She also notes that another of her experts, Dr. Harper, also testified that Tabitha's symptoms were consistent with abuse by Lance, but that Lance has not appealed the admissibility of that testimony.
[51] Tabitha claims that Lance did not properly object to Dr. Fleisher's testimony at trial and that the objection was therefore not properly preserved for appeal. Lance responds that he extensively objected to all the profile evidence, including on the basis of vouching, and that this is sufficient for appeal purposes. Lance's objection was ongoing and thus preserved.
[52] Broderick v. King's Way Assembly of God Church, 808 P.2d 1211, 1216 (Alaska 1991).
[53] See Russell v. State, 934 P.2d 1335, 1343 (Alaska App.1997).
[54] Broderick, 808 P.2d at 1216.
[55] See, e.g., Russell, 934 P.2d at 1343-44.
[56] See, e.g., State v. J.Q., 252 N.J.Super. 11, 599 A.2d 172, 184 (App.Div.1991).